Caterpillar Tractor Co., Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued September 12, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Jason S. Shapiro*, with him *J. Thomas Menaker*, *McNees, Wallace & Nurick*, for petitioner.

*Michael Hardiman*, for respondent.

OPINION BY JUDGE ROGERS, October 26, 1983:

Caterpillar Tractor Company has filed a petition for review of an order of the Pennsylvania Human Relations Commission directing that the respondent, Henry Glenn Baynes, be reinstated to his former su-

pervisory position with the petitioner with back salary and benefits. The Commission found that the petitioner's act of demoting the respondent was based on race in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(a).

The Commission's hearing of the respondent's complaint of discrimination produced little dispute as to the facts. On May 18, 1979, the respondent, who is black, was a salaried production foreman, a first level supervisory position, at the petitioner's York, Pennsylvania, plant. He had been with the company since 1973, having started as a bargaining unit employee at hourly wages. He was promoted to Work Standards Analyst in June, 1977 and to foreman in May, 1978. Before the incident which resulted in his demotion, the respondent had not been accused of any conduct which reflected badly upon his integrity or his dedication to his employer's interests.

The respondent's demotion from foreman to production line worker occurred as a result of his ordering two employees in his charge on the burner tube line to falsify their production reports on May 18, 1979. The falsification consisted of telling one hourly employee, after the machine he was operating had broken down, to wash pieces for another employee, a welder, and to allow the welder to take credit for the washing, although the latter was free to continue his welding activity. Washing pieces is considered direct labor activity, which earns base hour (or production hour) credit, a base hour being the time required to do a particular unit of work. The respondent, however, ordered the first employee to charge the time spent washing to an indirect labor account, for which no base hours are earned.

The charge of time spent on direct labor work to indirect labor accounts results in the reporting of few-

er pieces than are actually produced, such that the remainder may be saved and attributed to another day's work. This is called banking, and it was a violation of the employer's base hour integrity standards. In this case, the total amount of time involved in the falsification was nine-tenths of a base hour. The respondent knew that banking was a violation of company policy, but he testified that he did not consider this fact at the time of the incident which led to his demotion because at that time he was suffering from hemorrhoids. When questioned about it later, he fully admitted the dereliction to his superiors.

The Commission found that the respondent had violated the company's base hour integrity standards. It also found as an extenuating circumstance that the respondent was experiencing severe pain from a hemorrhoid condition which shortly after this event was required to be surgically corrected, causing him to be incapacitated for nine weeks. The respondent testified that at the time of the incident leading to his demotion he had excruciating pain and was attempting to get off of the line.

The Commission found, on substantial evidence, that a white supervisor, Harry Fishel, had on August 16, 1977 committed a like offense but that the discipline imposed was that of a two-week suspension. This was with ''no salary deduction . . . made for the two-week suspension.''[1] The Commission also found that soon after the Fishel incident the company circulated a memorandum to all hourly employees regarding incorrect production reporting. This document warned that future cases of these incidents would result in loss of employment at Caterpillar. The

---

[1] The quoted phrase appears in a letter from the employer to the Pennsylvania Human Relations Commission admitted into evidence at the Commission's hearing.

Commission minimized the significance of the memorandum as justification for the harsher penalty imposed in the respondent's case, describing it as a clarification of existing policy. Indeed the record contains evidence that false production reporting was contrary to company policy both before and after the issuance of this memorandum, and that the Welcome to Caterpillar employee handbook warned all employees that such an offense could result in discharge. The Commission found further that violations of base hour integrity standards continued to occur after this memorandum was issued; that management had actual and constructive notice of these violations through direct observation and review of daily production reports, many of which reflected unusually high percentages; and that no disciplinary action was taken, even when management was informed of specific instances of incorrect reporting.

The Commission concluded that the petitioner illegally discriminated against the respondent "because of his race, black, by demoting him from a supervisory position for violation of the respondent's base hour integrity standards when it did not demote a white employee, Harry Fishel, who engaged in similar conduct."

We may not disturb an order of the Commission unless its adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or the proceedings violated the statutory provisions relating to practice and procedure of Commonwealth agencies, or the findings of fact necessary to support the adjudication are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

The method by which these types of cases are to be adjudicated is now familiar. *United States Postal Service Board of Governors v. Aikens,* U.S. ,

103 S.Ct. 1478 (1983) ; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981) ; *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973) ; *General Electric Corp. v. Pennsylvania Human Relations Commission,* 18 Pa. Commonwealth Ct. 316, 334 A.2d 817 (1975), *rev'd on other grounds,* 469 Pa. 292, 365 A.2d 649 (1976). We will however again describe it, employing for this purpose the language of the Supreme Court of the United States in *Texas Department of Community Affairs v. Burdine:*

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
>
> . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. (Emphasis added) (citations omitted).

*Id.* at 252-53.

The defendant-employer's burden is as follows:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evi-

dence raises a genuine issue of fact as to whether it discriminated against the plaintiff. . . .

To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. (Footnotes omitted.)

*Id.* at 254-55.

In the instant case, the Commission held that the respondent proved a *prima facie* case based upon substantial evidence and that although the petitioner provided a legitimate, nondiscriminatory reason for its action, its defense to the charge of race discrimination amounts to a pretext and did not justify the disparate treatment received by the respondent.

The employer urges upon us two reasons why we should hold that the respondent did not prove a *prima facie* case of discrimination and one reason why, even if the respondent did prove a *prima facie* case of discrimination, we should hold that it, the petitioner, had carried its burden to show that it had a legitimate, nondiscriminatory reason for demoting the respondent and that the Commission therefore erred in finding its defense pretextual.

With respect to the petitioner's first two arguments, as *Burdine* teaches, the "burden of establishing a *prima facie* case of disparate treatment is not onerous." *Id.* at 450 U.S. 253. In this case, the respondent would certainly carry this burden by proving that he was a member of a racial minority, that he was demoted and that in respect of the demotion he was treated differently from one who was not a member of a racial minority and who committed essentially the same act as that which led to his demotion.

The petitioner contends that the respondent failed to prove he was treated differently from another person because in the course of the proceedings he stipulated that:

Prior to May 1979, [employer] had demoted at least four white foremen to hourly production jobs because of poor work performance as supervisors.

The Commission failed to mention the stipulation in its decision. This fact, the employer argues, demonstrates that the Commission ignored it. Therefore, the petitioner contends, we should in view of the stipulation, conclude that the respondent was treated no differently from four white supervisors. But the four white foremen were demoted for poor work performance. There is no evidence in this record that the respondent's work was other than satisfactory. He was demoted not for poor work performance but for violating a company rule which, with respect to Fishel, a white supervisor, had resulted not in demotion but a suspension without deduction of pay.

The employer further contends that the respondent failed to prove disparate treatment and therefore a *prima facie* case of discrimination because the record shows that one Jarl Thorsen, a white supervisor, was demoted in late 1979 or 1980 for the same offense as that committed by the respondent. The Thorsen incident seems almost surely to have occurred after August 8, 1979, the date on which the respondent filed his complaint. The petitioner agreed that Thorsen's demotion occurred after July, 1979, and that it could have occurred as late as 1980. The Commission might have considered the possibility that the respondent's complaint was instructive to the petitioner. In any event, the weight to be given to both the stipulation and the Thorsen incident was for the Commission to decide. There being ample evidence supporting the findings upon which the conclusion that a *prima facie* case of discrimination had been established, we may not disturb the Commission's order because there is other record evidence which, if accepted or accorded

greater weight, might have caused the Commission to decide the case differently.

As noted earlier, the employer argues that even if the respondent established a *prima-facie* showing of discrimination, which we agree he did, it met its burden of articulating a legitimate, nondiscriminatory reason for its action and that the Commission's finding of pretext is not supported by a preponderance of the evidence and is therefore erroneous.

The petitioner relies in this regard on the memorandum it issued after Fishel's suspension putting employees on notice that future violations would be dealt with harshly. It contends that this action justified severe punishment of the respondent after the memorandum's publication. The Commission found, however, that the memorandum, which incidentally was addressed to hourly employees not supervisors, merely clarified and did not change long-standing company policy. This conclusion is sufficiently supported by, *inter alia,* the Welcome to Caterpillar booklet provided employees before the Fishel incident warning that the falsification of work records could result in discharge.

The petitioner further argues that there were extenuating circumstances for Fishel's conduct consisting of the urgent request of another department for the materials being produced on Fishel's production line. The Commission adequately answered this alleged distinction by observing that the respondent's painful physical condition was at least as compelling an excuse as the importunities of another department.

Other evidence supported the respondent's allegations of pretext. Management had been repeatedly informed of Fishel's practice of claiming base hour credit for work not actually completed but no disciplinary action was taken until the union confronted the petitioner. Credible evidence that the practice of

banking was commonplace for a long time, that other base hour integrity standards were routinely violated and that management knew or should have known of these violations was introduced by the respondent. Evidence that harsher sanctions were imposed upon a black hourly employee than on a white hourly employee for the same offense was presented. Evidence was given that the respondent himself on several occasions told management of specific disciplinary infractions and that no action was ever taken by the company.

Being satisfied that the Commission's findings are supported by substantial evidence and that its decision was arrived at by the application of the correct principles of law, we affirm the order appealed from.

### ORDER

AND Now, this 26th day of October, 1983, the order of the Pennsylvania Human Relations Commission in the above-captioned matter, dated September 1, 1982, is hereby affirmed.