Emma Smith, Appellant *v.* B & O Railroad Company, Appellee.

Argued March 12, 1985, before Judges MacPhail and Barry and Senior Judge Barbieri, sitting as a panel of three.

*David B. Washington,* with him, *Clifford C. Cooper,* for appellant.

*Theresa Homisak,* with her, *Gary F. Sharlock, Sharlock, Repcheck & Mahler,* for appellee.

OPINION BY JUDGE MACPHAIL, June 19, 1985:

Emma Smith (Appellant) appeals here from an order of the Court of Common Pleas of Allegheny County reversing an order of the Pittsburgh Commission on Human Relations (Commission).

Appellant, a black female, was hired by the Baltimore and Ohio Railroad Company (Employer) as an extra board clerk on January 11, 1979.[1] Extra board clerks provide a pool of clerical employees to fill vacancies (due to vacation or illness) in a variety of clerical positions.

---

[1] An extra board clerk is a full time clerical position covered by the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees' labor agreement (BRAC Agreement). Employees assigned to extra boards are guaranteed forty (40) hours of work per week. Rule 25(2) of the BRAC Agreement. In addition, Rule 25(5) of the BRAC Agreement provides that:

(5) Employees assigned to extra board positions shall be utilized on the seniority district to which assigned to fill vacancies, perform extra work, or train on regular positions in accordance with this agreement where called. It is not the intent of the parties that carrier is restricted to calling extra board employees in seniority order or on a first-in, first-out basis.

In June of 1980, Appellant, under the terms of the BRAC agreement, bid for a position as a C-335 Steno-Clerk[2] in the Engineering Department. The three most senior bidders were Carol Taylor, a black female hired 7-29-74; Deborah Watkins, a white female hired 7-19-78; and Appellant, hired 1-11-79. The three applicants were given a dictation and typing test by Mr. Fred Haddix, the Employer's Assistant Manager of Engineering. Ms. Taylor's test was found to be unsatisfactory. Mr. Haddix stated that both Appellant and Ms. Watkins' test scores were satisfactory to him, and awarded Ms. Watkins the position of Steno-Clerk based on her seniority.

In September of 1980, Appellant was one of ten applicants bidding on position B-15, Secretary-Division Manager's office.[3] All ten applicants were interviewed; none were tested. The position was awarded to Paul Marcinowski, a white male, who had some typing skills. At the time he was awarded the B-15 position, Mr. Marcinowski was enrolled in a steno-script class.

Appellant was furloughed between September, 1980 and August, 1981. Appellant alleges that the Employer failed to call her for temporary work on cer-

---

[2] A "C" position is a general category, awarding jobs through straight bidding, which means that the job is awarded to the more senior applicant provided fitness and ability are equal. (Hearing No. 2, N.T. at 190). The BRAC Agreement does not contain a job description of a "C" position.

[3] The prefix "B" indicates that this position falls within Category B, as outlined in Appendix G of the BRAC Agreement, as a Partially Excepted Position. Appendix G provides that "[w]hen filling vacancies on "B" positions, Carrier will be privileged to select the most qualified employee among the employees on that particular seniority roster making application; or if no employee makes application, Carrier will be free to fill the vacancy without readvertisement."

tain positions where white female and male employees with less seniority were called in.[4]

On November 21, 1980, Appellant filed a complaint with the Equal Employment Opportunity Commission which referred the complaint to the Commission. Appellant charged that because of her race, she was not promoted to either the C-335 Steno-Clerk position or the B-15 Secretary-Division Manager's Office position and that the Employer discriminated against her in recalling less qualified white employees while she was furloughed. Hearings were held and, in a decision dated February 9, 1983, the Commission found in favor of Appellant. The Commission ordered the Employer to:

1) pay Appellant the difference in pay between the amount earned and what she would have earned had she been awarded the C-335 Steno-Clerk position on June 16, 1980, giving proper consideration to Appellant's seniority as compared to seniority of the individual who displaced the employee awarded the Steno-Clerk job on June 16, 1980;

2) make the appropriate adjustments in employee benefits to which Appellant would have been entitled had she been awarded the C-335 Steno-Clerk position;

3) employ Appellant in the first C-335 Steno-Clerk or comparable position which becomes available and for which Appellant qualifies; and

4) offer equal job posting and training opportunities to Appellant.

---

[4] We note that Rule 25(5) of the BRAC Agreement arguably disposes of Appellant's contention that Employer discriminated against her in recalling less senior employees to fill vacancies. (See footnote 1, supra).

The Employer appealed to the court of common pleas from the Commission's decision,[5] which, without taking additional evidence, reversed the Commission's order. The trial court stated that "[a]lthough [Employer] has established minimum qualifications for entry level stenographic jobs at 45 words per minute typing and 80 words per minute shorthand it is left to supervisory personnel to determine the minimal qualifications for positions above the entry level job." The Commission had found that Ms. Watkins, the white female applicant awarded the C-335 Steno-Clerk position, did not possess these minimal qualifications. The trial court reasoned that "[i]mplicit in this finding is the Commission's assumption that entry level qualifications are threshold qualifications for all upper level positions. The Court has carefully reviewed the record including the labor agreement in effect between the parties and must conclude otherwise." The trial court held that (1) minimum qualifications applicable to entry level positions do not apply to upper level positions; (2) the BRAC Agreement requires Employer to promote the most senior applicant demonstrating *sufficient* fitness and ability; and (3) the BRAC Agreement vests wide discretion in the Employer in determining what is or is not "sufficient." The court then stated that since the Employer's supervisor who did the hiring was satisfied that Ms. Watkins had sufficient ability to perform the job and was senior to Appellant, the selection of Ms. Watkins over Appellant was not the result of racial discrimination.

---

[5] Appellant did not file a cross appeal regarding the B-15 Secretary-Division Manager's Office position or the failure to recall her from furlough issue. Therefore, only the award referencing the C-355 Steno-Clerk position is before us. However, we note that the Commission *did* find that the Employer had discriminated against her with respect to the B-15 (Finding of Fact No. 37) and recall positions (Finding of Fact No. 44).

This Court's scope of review, where, as here, the trial court did not take additional evidence, is limited to a determination of whether the Appellant's constitutional rights have been violated, whether there was an error of law or whether any necessary findings of fact made by the Commission are not supported by substantial evidence. *Reed v. Miller Printing Equipment Division of Western Gear Corp.*, 75 Pa. Commonwealth Ct. 360, 462 A.2d 292 (1983).

In addressing the issue of whether Appellant made out a prima facie case of discrimination, Pennsylvania has adopted the four prong test set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976). Under *McDonnell-Douglas*, establishing a prima facie case of discrimination requires a complainant to prove that 1) he is a member of a protected minority, 2) he applied for a job for which he was qualified, 3) he was rejected, and 4) the employer continued to seek applicants of equal qualifications. *Winn v. Trans World Airlines, Inc.*, 75 Pa. Commonwealth Ct. 366, 462 A.2d 301 (1983), *aff'd per curiam*, Pa. , 484 A.2d 392 (1984). "Once the prima facie case is established, a rebuttable presumption of employment discrimination arises. The burden of production then shifts to the employer to show a legitimate non-discriminatory reason for the rejection." *Department of Transportation v. Pennsylvania Human Relations Commission*, 84 Pa. Commonwealth Ct. 98, 103, 480 A.2d 342, 346 (1984). To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248,

257 (1981). Complainant, in order to prevail, is then required to show by a preponderance of the evidence that the reasons given by the employer were pretextual and that she was therefore the victim of intentional discrimination. *Burdine*. The burden of persuading the trier of fact that the employer intentionally discriminated against the complainant is always the complainant's. *Caterpillar Tractor Co. v. Pennsylvania Human Relations Commission,* 78 Pa. Commonwealth Ct. 86, 466 A.2d 1129 (1983).

Initially, we believe that the Commission was correct in finding that Appellant had made out a prima facie case of discrimination as to the C-335 Steno-Clerk position.[6] As we have noted, the Employer justified its selection of Ms. Watkins by stating that both Ms. Watkins and Appellant had "sufficient" qualifications for the position, and that being the case, selected Ms. Watkins because she had more seniority.[7] However, the Commission chose not to believe the

---

[6] The fact that the Employer did not seek applicants for the position after rejecting Appellant is not fatal to establishing a prima facie case. *Pittsburgh Commission on Human Relations v. Central Blood Bank of Pittsburgh,* 75 Pa. Commonwealth Ct. 376, 462 A.2d 295 (1983). *See Reed,* 75 Pa. Commonwealth Ct. at 364, 462 A.2d at 294. (The *McDonnell-Douglas* "standard is a flexible one contingent on the peculiar factual details of a given scenario.")

[7] The BRAC Agreement states in pertinent part:

RULE 30

Promotion, Assignments and Displacements.

Employees covered by these rules shall be in line for promotion. Promotion, assignments and displacements under these rules shall be based on seniority, fitness and ability, fitness and ability being sufficient, seniority shall prevail.

NOTE: The word "sufficient" is intended to more clearly establish the right of the senior employee to bid in a new position or vacancy, or exercise displacement rights, where two or more employees have adequate fitness and ability.

Employer's assertion that Ms. Watkins' qualifications were sufficient. That was a question of fact for the Commission to resolve, and we must sustain that finding if it was supported by substantial evidence. *Central Blood Bank.*

The record reveals that the C-335 Steno-Clerk position required the applicant to have some minimum typing and shorthand skills. Employer's personnel manager testified that a person hired as a stenographer is expected to have stenographic skills and that an employee promoted to a stenographic position should have minimum qualifications for the job. The Employer's minimum qualifications for *entry* level stenographic positions are 45 words per minute typing and 80 words per minute shorthand. (Hearing No. 1, N.T. at 141-143). The Commission was of the opinion that a promotion reasonably should require at least those minimal skills. Mr. Haddix administered a dictation and typing test to the three senior applicants. Ms. Taylor was disqualified by Mr. Haddix because she did not possess the necessary dictation skills. (Hearing No. 2, N.T. at 95, 104). Appellant's test results indicated that she was qualified for the position. (Hearing No. 2, N.T. at 92). Ms. Watkins' test results, however, indicated that she did not even have the minimum qualifications required by the Employer to fill entry level positions.[8] Because there are no specific qualifications for upper level (*i.e.,* other than entry level) positions, it was Employer's con-

---

[8] Based upon the number of typographical errors made, the Commission found that Ms. Watkins' typing speed averaged 31 words per minute. (Finding of Fact No. 20). There is ample testimony of record to support this finding. The Commission also found that Ms. Watkins did not possess dictation skills. Employer's witness admitted that Ms. Watkins did not take shorthand in the usual manner, but maintained that since she had acquired speedwriting skills, she would be able to take dictation.

194

tention that supervisors are free to devise their own standards. (Hearing No. 1, N.T. at .90-91; Hearing No. 2, N.T. at 133). Mr. Haddix stated that although Ms. Watkins did not possess the minimum qualifications necessary for an entry level stenographic position, he considered Ms. Watkins' skills "sufficient" for the C-335 Steno-Clerk vcancy. (Hearing No. 2, N.T. at 93-94, 96). On that basis, Ms. Watkins was awarded the position. When Appellant objected because Ms. Watkins was not qualified as a stenographer, Employer gave Ms. Watkins another test,[9] which was significantly shorter than the original test. Again, Mr. Haddix awarded Ms. Watkins the position.

The Commission rejected the Employer's justification for Ms. Watkins' selection as pretextual. It further found that Ms. Watkins was promoted to the position even though she did not meet the Employer's minimum qualifications for a stenographer. The Commission concluded that since Appellant was qualified but not selected, the basis for her rejection was racial discrimination.[10]

Given the record before us, which we have very carefully reviewed, we cannot agree with the trial court that there was not substantial evidence to support the Commission's conclusion.[11] We therefore

[9] Neither Ms. Taylor nor Appellant were retested.

[10] Appellant does not contend that the seniority provision in Rule 30 is illegal or invalid; what Appellant challenges is the trial court's finding that Ms. Watkins possessed sufficient fitness and ability for the C-335 position.

[11] The trial court reasoned that "[t]he fact that the Applicant may not qualify for an entry level position is immaterial in this case where all applicants were already employed by the Employer and were merely seeking a promotion." Although courts are ill-equipped to evaluate the qualifications of those in clerical positions, it seems perfectly logical to us for upper level positions to require at least the minimum qualifications established for entry level positions, where the Employer sets minimum qualifications.

reverse the court of common pleas and reinstate the Commission's order.[12]

### ORDER

The order of the Court of Common Pleas of Allegheny County in the above captioned matter, dated December 30, 1983, is hereby reversed and the order of the Pittsburgh Human Relations Commission is reinstated.

---

This is not to say that an employer may not use subjective standards in selecting employees for either hire or promotion. But, in this case, the facts underlying the Employer's failure to promote Appellant can be objectively evaluated by examining the results of the dictation test. *Compare Knight v. Nassau County Civil Service Commission*, 649 F.2d 157, 161 (2d Cir. 1981) ("The fact that satisfaction of job performance criteria is judged by an employee's supervisors does not necessarily warrant the inference that the evaluations are subjective.")

[12] The Employer, citing to *Straw v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 99, 308 A.2d 619 (1973), *affirmed*, 478 Pa. 463, 387 A.2d 75 (1978), contends that because Appellant did not specifically charge Employer with maintaining unequal job opportunities, the Commission exceeded its authority when it directed Employer to offer equal job posting and training opportunities to Appellant. In *Straw*, this Court stated that due process of law requires notice of all charges for which a violation may be found to be given to respondent. The respondent in *Straw* had been found guilty of a violation for which he had no notice. In the instant case, there is no question of notice but rather a question of the relief granted. We do not believe that *Straw* requires notice of the relief which might be granted. Additionally, we believe in this case that a charge of maintaining unequal job opportunities could be logically inferred from Appellant's charge of discrimination. The trial court stated that inasmuch as the Commission's order was limited to Employer's failure to award Appellant the position she sought in the engineering department, it would limit its review to that complaint.