527 A.2d 602

James L. Thomas, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued April 23, 1987, before Judges COLINS and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Emily J. Leader, Stock and Leader,* for petitioner.

*Francine A. Ostrovsky,* with her, *Robert M. Miller, Jr.,* Assistant Chief Counsel, for respondent.

*Robert R. Reber,* with him, *Kenneth E. Sands, Jr.,* for Berks County Board of Prison Inspectors, intervenor.

OPINION BY SENIOR JUDGE NARICK, June 15, 1987:

James L. Thomas, Jr. (Thomas) appeals from an order of the Pennsylvania Human Relations Commission (Commission) dismissing his complaint against the Berks County Prison (Employer). In his complaint, Thomas alleged that the Employer discriminated by discharging him as a corrections officer on account of his race, black, in violation of Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955 (Act). In support of his complaint before the hearing officer of the Commission, Thomas alleged that certain white officers who committed similar infractions were less severely disciplined. We affirm the Commission's order.

Thomas was employed by the Employer as a corrections officer on March 26, 1981. On November 9, 1982, approximately 19 months thereafter, the Employer conducted a disciplinary hearing on two citations issued to

Thomas relating to excessive absenteeism and failure to attend training sessions. At the conclusion of the hearing, the Employer's Warden indicated to Thomas that, based on his entire record of citations and disciplines, including absenteeism, he was prepared to discharge Thomas but would give him an opportunity to resign. Thomas, at the hearing, accepted the offer but on November 16, advised the Warden he would not resign whereupon he was terminated.

On February 17, 1983, Thomas filed a complaint with the Commission. The Commission notified Thomas that probable cause existed to credit the allegations set forth in the complaint. The Commission then conducted a conciliation meeting, which was not successful. Thereafter, a hearing was held before the Commission's hearing examiner on July 17-18, 1985. The hearing examiner's findings, conclusions of law and opinion, which were adopted by the Commission, concluded that Thomas was discharged because of an accumulation of prior offenses and citations, including absenteeism, whereupon Thomas filed his petition for review with this Court.

In his appeal, Thomas asserts that the Employer 1) failed to refute his *prima facie* case; 2) failed to show that its reasons for terminating him were legitimate and non-discriminatory; and 3) failed to provide Thomas with an adequate opportunity to answer the charges against him other than those involving excessive absenteeism. The Commission and the Intervenor, Berks County Board of Prison Inspectors, contend that Thomas was terminated based on his record of prior citations and disciplines, including his absentee record and failure to attend training sessions.

Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of

fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986). Questions regarding witness credibility and weight to be accorded evidence are within the sole province of the Commission, *Department of Transportation v. Pennsylvania Human Relations Commission*, 84 Pa. Commonwealth Ct. 98, 480 A.2d 342 (1984), reversed on other grounds, 510 Pa. 401, 508 A.2d 1187 (1986).

As a preliminary matter, we note, based on our independent research, that in individual employment discrimination cases such as the one before us, the record will seldom contain direct or indirect evidence of racial motivation. Also, while racial motivation is practically impossible to affirmatively prove, it must be based on a conclusion arrived at where there is substantial evidence presented before the Commission which is sufficient to convince a reasonable mind, to a fair degree of certainty, that the Employer violated Section 5(a) of the Act. The cases cited below demonstrate the procedure by which individual employee discrimination cases are to be adjudicated, and they also reaffirm that the ultimate burden of persuading the trier of fact that an employer intentionally discriminated against a complainant remains at all times with the complainant.

We now proceed to consider the familiar method by which employment discrimination cases are to be adjudicated. *Johnson v. Transportation Agency,* U.S. , 107 S.Ct. 1442 (1987). *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Also see Smith v. B & O Railroad Co.*, 90 Pa. Commonwealth Ct. 186, 494 A.2d 1161 (1985); *Caterpillar Tractor Co. v. Pennsylvania Human*

*Relations Commission,* 78 Pa. Commonwealth Ct. 86, 466 A.2d 1129 (1983); *General Electric Corp. v. Pennsylvania Human Relations Commission,* 18 Pa. Commonwealth Ct. 316, 334 A.2d 817 (1975), reversed on other grounds, 469 Pa. 292, 365 A.2d 649 (1976).

In the case before us the Commission properly found that Thomas had met his burden of establishing a *prima facie* case of discrimination by the Employer in violation of Section 5(a) of the Act by meeting the flexible test set forth in *McDonnell, Burdine,* and *General Electric* in that he was a member of a protected minority, with a desire to remain at his employment, and was discharged.

Next, as stated by our Court in the *Smith* case, 90 Pa. Commonwealth Ct. at 191-92, 494 A.2d at 1163-64:

'Once the prima facie case is established, a rebuttable presumption of employment discrimination arises. The burden of production then shifts to the employer to show a legitimate non-discriminatory reason for the rejection.' Department of Transportation v. Pennsylvania Human Relations Commission, 84 Pa. Commonwealth Ct. 98, 103, 480 A.2d 342, 346 (1984). To satisfy this burden, 'the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.' Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Complainant, in order to prevail, is then required to show by a preponderance of the evidence that the reasons given by the employer were pretextual and that she was therefore the victim of intentional discrimination. Burdine. The burden of persuading the trier of fact that the employer intentionally discriminated against

the complainant is always the complainant's. Caterpillar Tractor Co. v. Pennsylvania Human Relations Commission, 78 Pa. Commonwealth Ct. 86, 466 A.2d 1129 (1983).

Further, as stated by the Court in *Burdine:*

> The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. The McDonnell Douglas division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question. (Citations omitted.)

450 U.S. at 253.

The sole question which remains to be decided is whether in light of the standards set forth above the Commission acted properly in finding that the Employer did not violate Section 5(a) of the Act. It is well established, as we note above, that the findings of the Commission may not be disturbed on appeal if they are in accordance with the law and supported by substantial evidence. Substantial evidence is that quantum of evidence which a reasonable mind might accept as adequate to support a conclusion. *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission,* 19 Pa. Commonwealth Ct. 1, 337 A.2d 922 (1975). Our Supreme Court stated in *Blumenschein v. Pittsburgh Housing Authority:*

> [I]t has been established as an elementary principle of law that courts will not review the actions of . . . administrative tribunals involving acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power; . . .

> That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion.

379 Pa. 566, 573, 109 A.2d 331, 334-35 (1954) (emphasis in original).

Thomas contends that he was informed by his supervisor that he had a problem with excessive absenteeism and, as a result, a disciplinary hearing was conducted by the Employer on November 9, 1982 in which his absenteeism and failure to attend a training program were discussed. Therefore, Thomas argues that his discharge, which was based upon absenteeism was discriminatory because two similarly situated white corrections officers were treated more favorably. The first officer, Olin Marberger, had a more serious absentee record than Thomas. He was suspended for 10 days for severe absenteeism and tardiness. If Thomas was discharged solely on the basis of his excessive absenteeism, we would hesitate finding that he was properly discharged. However, the Employer's reasons for Thomas' discharge involved not only his excessive absenteeism, but his entire record of prior citations, reprimands and suspensions, including: a suspension for three days for refusal to obey an order in August, 1981; a two-day suspension when he failed to properly search an inmate in January, 1982; a citation for substandard work in October, 1981; a formal reprimand for breach of security in May, 1981; a citation for substandard work in December, 1981; and a citation for unprofessional handling of an incident in which he struck an inmate with keys in September, 1982. Thus, Thomas' comparison with Marberger is inapposite. The second corrections officer, Jeff Kramer, who Thomas claims was treated more favorably, was also terminated from his position. Kramer's disciplinary his-

tory consisted of trafficking of contraband, conduct unbecoming an officer and calling in sick but later being seen at a football game. Thomas contends that his past offenses and disciplines were not as serious as Kramer's. Based on our independent review of the record in this case, we find no evidence to support Thomas' contention that Kramer's offenses were more relatively serious than Thomas' or required more severe punishment.

Thomas further argues that the evidence presented by Employer, which was relied upon by the Commission, consisted of uncorroborated hearsay. Employer, in support of its position, introduced the testimony of Captain Benjamin Johnson and Assistant Warden Robert Santoro. Both Captain Johnson and Mr. Santoro indicated in their testimony that they were involved in personnel disciplinary hearings regarding Thomas. Captain Johnson, the highest ranking officer at the prison, testified he is responsible for security and the deployment of correctional officers. According to Captain Johnson, he had received numerous complaints from Thomas' direct supervisors regarding Thomas' handling of inmates, disobedience of orders and absenteeism. Captain Johnson further testified that attempts were made to assist Thomas in improving his work performance including a change by Captain Johnson in Thomas' work shift; however, these attempts proved unsuccessful. Mr. Santoro testified that he was a member of the hearing panel which resulted in Thomas' dismissal. According to Mr. Santoro the reasons for Thomas' termination involved not only absenteeism but other offenses as well, including willful disobedience, breaches of security, and mishandling of inmates. Mr. Santoro also testified that counseling, shift changes and other remedial efforts were made in order to improve Thomas' work performance, but these efforts were unsuccessul. Thus, based on the testimony of Captain Johnson and Mr. Santoro,

as well as Thomas' own admissions, we do not find the evidence introduced by Employer to consist of uncorroborated hearsay.

Thomas attempted to discredit the testimony of Captain Johnson and Mr. Santoro through the testimony of Lieutenant Charles Eckenroth, one of Thomas' shift commanders. Lieutenant Eckenroth testified that he was ordered to issue a citation to Thomas or be cited himself. The Commission reasoned that while this testimony may be "disturbing," it did not alter Thomas' disciplinary record. We agree.

Accordingly, based upon the testimony of Captain Johnson and Mr. Santoro, as well as Thomas' own admissions and the entire record, the Commission properly concluded that the Employer's reasons for terminating Thomas were legitimate, non-discriminatory and were supported by substantial evidence. Based thereon, the Employer effectively rebutted Thomas' *prima facie* case of racial discrimination. We also conclude that the Commission properly found that Thomas offered no significant evidence that the employer's reasons for the discharge of Thomas were pretextual.

Thomas also asserts that the Employer cannot rest its case of discharge upon his past record of suspensions, reprimands and citations. It appears from the record that Thomas accepted, without question, the prior punishments meted out to him in the form of suspensions, reprimands and citations. In our opinion, those prior incidents of misconduct and punishments are closed and are only relevant to the matter of determining what punishment should be imposed. They may not, however, be considered in determining whether the citations of absenteeism and failure to attend a training program which were considered at the November 9, 1982 disciplinary hearing should be sustained. After reaching a conclusion that the citations of exces-

sive absenteeism and failure to attend a training program were sustained by the evidence, the Employer and the Commission properly considered the previous suspensions, reprimands and citations in determining what punishment was appropriate. *See In Re Ditko's Appeal,* 385 Pa. 435, 123 A.2d 718 (1956).

Lastly, we must address Thomas' contention that he was not provided with an adequate opportunity to answer charges brought by Employer, except for those charges involving absenteeism. Thomas did not raise this argument before the Commission; therefore, it cannot be addressed by this Court. 2 Pa. C. S. §703(a). *Murphy v. Pennsylvania Human Relations Commission,* 77 Pa. Commonwealth Ct. 291, 465 A.2d 740 (1983), *aff'd* 506 Pa. 549, 486 A.2d 388 (1985), appeal dismissed      U.S.      , 105 S.Ct. 2669 (1985).

Applying the above standard of review and based upon our review of the entire record, we are satisfied that the Commission's findings and conclusions were supported by substantial evidence and in accordance with the law.

## ORDER

AND NOW, this 15th day of June, 1987, the order of the Pennsylvania Human Relations Commission dated March 26, 1986 is affirmed.

Judge PALLADINO concurs in the result only.