560 A.2d 859

**Robbie C. HENDERSON, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, OFFICE OF THE BUDGET, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1989.

Decided June 15, 1989.

Petition for Allowance of Appeal Denied March 14, 1990.

608

Gerard M. Mackarevich, Ira H. Weinstock, P.C., Harrisburg, for petitioner.

Arlene F. Klinedinst, Asst. Counsel, Harrisburg, for respondent.

Before BARRY and PALLADINO (P.), JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Robbie C. Henderson (Henderson) petitions for review of the State Civil Service Commission's (Commission) July 14, 1988 order which upheld the Office of the Budget's (Office) removal of Henderson from his probationary position as audit specialist trainee and dismissed Henderson's appeal for failure to state a *prima facie* case of racial discrimina-

tion under Section 905.1 of the Civil Service Act (Act).[1] The primary issue presented for review pertains to the standard of proof to be used to analyze racial discrimination claims brought under Section 905.1 of the Act.[2] The Commission's order is affirmed.

Henderson was appointed by the Office as a temporary fiscal assistant in the Liquor Control Board Comptroller's Office, effective November 15, 1984, for a period not to exceed six months. While serving in this capacity, Henderson was transferred to the Department of Transportation Comptroller's Office and promoted to the audit specialist trainee class, a one-year probationary training program, commencing February 7, 1985. By letter dated August 23, 1985, the Office removed Henderson from the training program for alleged unsatisfactory performance and returned him to his previous position as temporary fiscal assistant.[3] This temporary position, however, expired

1. Section 905.1 of the Act, Act of August 5, 1941, P.L. 752, *as amended,* added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a, provides in pertinent part that "[n]o officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of ... race, ... or other non-merit factors."

2. The Office raised the additional issue of whether Henderson's appeal to the Commission was proper. The Office argues that Henderson did not expressly raise discrimination under Section 951(b) of the Act, added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(b), which provides for appeals to the Commission by any person who alleges a violation of Section 905.1 of the Act. This argument is without merit. The Commission found that Henderson sufficiently raised the issue of discrimination and accepted his appeal despite his failure to check the appropriate boxes on the appeal form concerning claims of racial discrimination. Henderson's appeal form instead refers to a letter which was attached thereto. In the letter, Henderson uses the terms "bias" and "prejudice" and states that such should not affect performance evaluations. Henderson also notes that he was the only black employe. Moreover, the Commission continued this matter, thus providing the Office with ample time to prepare a defense. Accordingly, the Commission neither erred nor acted in derogation of 4 Pa.Code § 105.12(c) (appeals alleging discrimination *may* be dismissed if they do not include specific facts relating to discrimination).

3. Section 804.1 of the Act, added by Section 3 of the Act of September 29, 1951, P.L. 1636, 71 P.S. § 741.804a, governs the rights of promoted employes during probationary periods and provides that:

on or about May 15, 1985, resulting in Henderson's termination.

Henderson thereafter appealed his removal from the training program to the Commission, alleging discriminatory action by the Office. A hearing followed on January 15, 1986. Henderson testified that he is a black person whose employment was terminated; that he was required to take the auditor specialist training test; that he was the only black person employed in this division of the Office (Division); that none of the white trainees were terminated; and that one of the white trainees, Richard Denny, received an extended training period. Henderson further testified that he received a two hour orientation contrary to the one to three day orientation allowed under the training program and that he was assigned to perform two complete audits without assistance at a date much earlier than outlined in the training program. N.T., January 15, 1986 Hearing, pp. 30–31, 33–34, 43–47.

Henderson testified as well that his immediate supervisor refused to answer his questions; that he was not given evaluations of his performance following each assignment nor did he receive additional training in any area in which he may have been experiencing difficulty as required by the training program; and that he did not initially receive essential documents used in performing audits. Moreover, Henderson knew of no white employe who received an abbreviated orientation, was subjected to accelerated assignments, or did not initially receive the essential documents. N.T., January 15, 1986 Hearing, pp. 36, 38, 49–52, 60–61.

Henderson also called as witnesses Joseph Lubinsky, his immediate supervisor, and Richard Berard, an audit special-

If the probationary period has resulted from a promotion such removal shall not be from the classified service. A classified employe so removed during a probationary period, resulting from promotion, shall have the right to and shall be returned to the position or class held immediately prior to such promotion without necessity of appeal or hearing.
See also 4 Pa.Code §§ 97.38(4), 101.32.

ist II who assisted Henderson in his training. Lubinsky testified that there may have been one other black employe in the Division several years earlier; that matters not covered in the abbreviated orientation at issue were later reviewed with Henderson; that the abbreviated orientation was for Henderson's convenience [4]; that he had given some white trainees critical evaluations but they were allowed to complete the training program; that none of the other trainees had the same performance problems as Henderson; and that Henderson was unable to reconcile a checking account after repeated attempts. Lubinsky further testified, as did Berard, that other trainees had been demoted as well as terminated in the past and that Henderson was only assigned to perform specific tasks within the audits. Lubinsky added, however, that completion of the actual testing to prepare the work papers might be described as an entire audit. Lubinsky also stated that Denny's training period was not extended while Berard indicated that Denny's performance was not unsatisfactory. N.T., January 15, 1986 Hearing, pp. 69–72, 74–75, 79–80, 83–86, 88–89, 92, 94.

After presentation of Henderson's evidence, counsel for the Office moved to dismiss Henderson's complaint for failure to establish a *prima facie* case of racial discrimination. The Commission granted the motion to dismiss and entered an order, stating, *inter alia,* "[u]pon consideration of the *prima facie* case presented by the appointing authority [the Office] and the appointing authority's motion to dismiss, IT IS HEREBY ORDERED that the appeal of Robbie C. Henderson be and the same is hereby dismissed with prejudice." Upon Henderson's petition for review, this Court vacated the Commission's order and remanded the case to the Commission with instructions to set forth its

4. Henderson was instructed to report to Harrisburg for his orientation and packed his personal belongings into his car under the presumption that he would immediately depart for his assigned home office in Pittsburgh. Henderson informed Lubinsky that his car was so packed and parked on the street. N.T., January 15, 1986 Hearing, pp. 64–65.

findings of fact and reasoning.[5]

After review of the record on remand, the Commission accepted as credible the testimony of Lubinsky and Berard in finding that Henderson's orientation was proper; that Henderson was not assigned to perform a complete audit; and that Henderson continued to make repeated errors and failed to show improvement despite discussions with his supervisors concerning the same. The Commission further found the fact that Henderson was the only black employe in the Division and the only audit specialist trainee removed during the probationary period insufficient, standing alone, to establish discriminatory intent by the Office. The Commission thus concluded that Henderson failed to provide affirmative evidence of discrimination by the Office and that Henderson's demotion and removal were based solely upon merit factors, whereupon the Commission again dismissed Henderson's appeal for failure to state a *prima facie* case of discrimination. This petition for review [6] followed.

■ We initially note the inherent fairness in subjecting those who are alleging traditional [7] employment discrimination to a uniform, yet flexible, standard of proof, when possible. In *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987), the Pennsylvania Supreme Court applied a modified version of the standard of proof developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36

5. *Henderson v. Office of the Budget,* 113 Pa.Commonwealth Ct. 306, 537 A.2d 85 (1988).

6. This Court's limited scope of review requires us to affirm the State Civil Service Commission's adjudication unless necessary findings are unsupported by substantial evidence, an error of law was committed, or the petitioner's constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Pavia v. Department of Transportation,* 77 Pa.Commonwealth Ct. 480, 482 n. 4, 466 A.2d 735, 737 n. 4 (1983).

7. The term "traditional" as used here encompasses only those claims of discrimination based upon race, sex, national origin, or the like. *See Pronko v. Department of Revenue,* 114 Pa.Commonwealth Ct. 428, 539 A.2d 456 (1988); Section 905.1 of the Act.

L.Ed.2d 668 (1973) [8], to a sex discrimination claim brought under Section 5(a) of the Pennsylvania Human Relations Act [9] (PHRA) wherein the complainant's employment was terminated due to an alleged personnel realignment.

In analyzing the matter before it, the Pennsylvania Supreme Court stated that:

> If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's *prima facie* case stands determinative of the factual issue of the case. In other words, if the employer rests without producing evidence, the plaintiff must prevail if he or she has produced sufficient evidence to make out a

**8.** In *McDonnell Douglas Corp.*, the complainant alleged that his discharge and the employer's hiring practices were racially motivated in violation of Sections 703(a)(1) and 704(a) of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). The United States Supreme Court stated that the complainant bears the initial burden to establish a *prima facie* case of racial discrimination which could be accomplished by showing that he belongs to a racial minority; that he applied and was qualified for a job for which the employer was seeking applicants; that, despite his qualifications, he was rejected; and that, after his rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications. The United States Supreme Court then explained that should the complainant provide sufficient *prima facie* proof, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's rejection and if the employer is successful, the complainant must be given a fair opportunity to show that the employer's reason is pretextual. At this latter phase in the shifting standard of proof, the United States Supreme Court noted that evidence of more favorable treatment received by similarly situated white employees would be relevant to the inquiry of whether the employer acted with discriminatory intent.

**9.** Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955, provides in pertinent part that:
> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, ...:
> (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual ... to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to ... tenure, terms, conditions or privileges of employment....

*prima facie* case. If, however, the defendant offers a non-discriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: Has the plaintiff proven discrimination by a preponderance of the evidence? Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.' The plaintiff is, of course, free to present evidence and argument that the explanation offered by the employer is not worthy of belief or is otherwise inadequate in order to persuade the tribunal that her evidence does preponderate to prove discrimination. She is not, however, entitled to be aided by a presumption of discrimination against which the employer's proof must 'measure up'.

516 Pa. at 131, 532 A.2d at 319 (citation omitted). This is the standard of proof we are now also adopting to analyze claims of traditional discrimination arising under Section 905.1 of the Act.[10] Application of this standard, however, is to be prospective only.

In *Allegheny Housing Rehabilitation Corp.*, the Pennsylvania Supreme Court found the complainant's evidence sufficient to state a *prima facie* case of sex discrimination under Section 5(a) of the PHRA. This evidence indicated that the complainant, a female, was hired and discharged from a position for which she was qualified and included as well payroll records establishing that more security person-

---

**10.** We note that the decision in *Hunter v. Jones,* 417 Pa. 372, 207 A.2d 784 (1965), cited by the Office, did not address the *prima facie* proof required to support a claim of discrimination nor any other language as to the standard of proof to be used to analyze such claims. This was done by the Pennsylvania Supreme Court in *Allegheny Housing Rehabilitation Corp.,* which, in effect, went beyond the decision in *Hunter.*

nel, all of whom were male, worked a greater number of hours after her dismissal.

Here, Henderson presented evidence that he is a black person who was removed from a probationary position for which he was qualified; that none of the white trainees were removed; and that greater toleration was extended to the white trainees' performance shortcomings. Henderson's evidence may also support the inference that any inadequacies in his performance were due to improper acceleration of his training. Given the critical role of circumstantial evidence in discrimination proceedings, the *prima facie* case cannot be an onerous one. *Allegheny Housing Rehabilitation Corp.* Moreover, in comparing the evidence found sufficient to support the complainant's *prima facie* case in *Allegheny Housing Rehabilitation Corp.* with that presented here, we believe that Henderson established a *prima facie* case of racial discrimination under Section 905.1 of the Act. It must be stressed, however, that the *prima facie* proof of discrimination here may not necessarily be required in all respects in a factually dissimilar case and must be tailored to accommodate differences in the types of traditional discrimination alleged and in the action claimed to be improper, keeping in mind that the function of the *prima facie* case is to eliminate the most common non-discriminatory grounds for the employer's action. *Id.*

Because Henderson met his initial burden of proof, the burden ordinarily would have shifted to the Office to clearly advance a legitimate non-discriminatory explanation for removing Henderson from the training program through the introduction of admissible evidence. This burden of production does not require an employer, such as the Office, to persuade the factfinder that it was actually motivated by the proffered reason or reasons. All that is required is that the employer's evidence raise a genuine issue of fact as to whether it discriminated against the complainant. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

 For the reasons that follow, we believe that, in this case, the employer has been relieved by Henderson of the employer's usual burden to advance a non-discriminatory explanation for removing him. In short, Henderson, by calling witnesses who rebutted his *prima facie* case and whose testimony the Commission was privileged to accept, clearly rendered unnecessary and sheer futility any effort by the Office to call witnesses or produce rebuttal testimony. The Commission, in accepting the adverse testimony adduced in Henderson's own case, had a firm foundation for its determination that Henderson's removal was not for a discriminatory reason or for a pretextual one.

Lubinsky testified on direct examination that he had no recourse but to remove Henderson from the training program in view of Henderson's inability to reconcile a checking account after repeated attempts. Lubinsky further testified on cross-examination that none of the other trainees exhibited the same performance problems as Henderson. Documentary evidence of record also demonstrates that Henderson received unsatisfactory performance evaluations based upon poor work habits, repeated errors and failure to show improvement. Exhibits AP-15, AP-16, AP-17. This evidence clearly raises a genuine issue as to whether the Office intentionally discriminated against Henderson and is sufficient to satisfy the Office's burden of production. *See, e.g., United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs.*

Accordingly, we must reject Henderson's contention that the Commission's dismissal was premature. We are aware, of course, that a complainant's counsel should be extended wide latitude since discrimination proceedings must often rest upon inferences drawn from acts. *See Thomas v. Pennsylvania Human Relations Commission*, 106 Pa. Commonwealth Ct. 598, 527 A.2d 602 (1987); *Lynch v. Department of Public Welfare*, 30 Pa.Commonwealth Ct. 235, 373 A.2d 469 (1977). However, trial science does not

618

call upon an adversary to produce unnecessary evidence when his case is adequately presented by his opponent. Obviously, the ultimate absurdity would be for the Office to go through the motions of offering into evidence the testimony adduced by Henderson to complete what Henderson believes to be its responsibilities in order to rebut his *prima facie* case.

For the reasons stated, we will affirm the Commission's order.

## ORDER

AND NOW, 15th day of June, 1989, the order of the State Civil Service Commission dated July 14, 1988 is affirmed.