**Cephus MOORE, Petitioner**

v.

**STATE CIVIL SERVICE COMMISSION (DEPARTMENT OF CORRECTIONS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 1, 2006.

Decided April 24, 2007.

Jennifer A. Nachamkin, Harrisburg, for petitioner.

Jonathan W. Kunkel, Asst. Counsel and Suzanne N. Hueston, Acting Chief Counsel, Camp Hill, for respondent.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

This matter involves review of the order entered by the State Civil Service Commission (Commission) dismissing Cephus Moore's appeal of his non-selection for promotion to the civil service position of Human Resource Analyst 4 (General) with the Department of Corrections (Department) (hereafter HR Analyst 4). Moore's statement of the questions involved includes whether the Commission erred in failing to make crucial findings of fact regarding the essential functions and duties of the HR Analyst 4 position and the experience and knowledge of the selected applicant, Karen L. Malone, relevant to the complex functions and duties of the HR Analyst 4 position; whether the Commission erred in imposing an incorrect burden of proof upon Moore to prove his claims of race and age discrimination; whether Moore satisfied his burden to show that the Department discriminated

against him based on race and age; and whether he proved technical discrimination due to the selection of Malone despite her late submission of the Department's job application and the Department's reliance upon criteria that were not disclosed until after the selection process was concluded.

I

On November 17, 2005, the Department posted a "Job Opportunity Announcement" for the HR Analyst 4 position in its Bureau of Human Resources to replace Steven Miller, an HR Analyst 4 (Employee Benefits) who was retiring in January 2006. The Department described the essential functions and duties of the HR Analyst 4 position to include administering the Department's employee benefit program; testifying in federal and state courts on claims under the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12101–12213, and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601–2654; overseeing the Department's unemployment compensation (UC) plan; conducting/attending training regarding benefits; and supervising professional and clerical staff. The minimum experience and training required for the position included "[o]ne year as a Human Resource Analyst 3 in the area of the parenthetical [General]." Job Opportunity—Announcement Number: 269–05, p. 2; Reproduced Record (R.R.) at 278a. All

interested candidates were directed to submit by December 1, 2005 a letter of interest, resume, position vacancy interest form, civil service application and Department job application, if not currently employed with the Department.

Moore, a 62–year–old African American with a bachelor's degree in business administration and a master's in public administration, was employed by the Department as an HR Analyst 3 (Employee Benefits) for approximately 11 years. Malone, a 43–year–old Caucasian with a high school diploma and training in cosmetology, was employed by the Office of Administration as an HR Analyst 3 (HR Systems) since 2001. Both applied for the HR Analyst 4 job and submitted the required documents by the December 1, 2005 deadline, except that Malone submitted her Department application eighteen days late during her interview.

Eight applicants were interviewed on December 19, 2005 by Timothy Musser, the Department's Human Resources Manager, and Ruth Palmer, its Chief of the Employee Services Division and an HR Analyst 5. The applicants were asked the same nine interview questions developed by Palmer in consultation with Miller. None of the questions addressed the applicants' experience in Systems Application Processes (SAP), a computer software program implemented by the Commonwealth in January 2004.[1] After the interviews,

---

1. The nine interview questions were as follows:
   - Briefly describe the education and relevant work experience, including supervisory experience, which you would bring to this position, and why you are pursuing it.
   - Please explain the methodology that is utilized in administering a decentralized benefit program.
   - Please explain the health and dental plans offered by the Commonwealth.
   - Please explain the Worker's Compensation Program for Commonwealth employees.
   - The Family Medical Leave Act involves three (3) types of leave. Can you explain each leave and explain the basic premise of the Act?
   - Please explain the difference between Act 534/632 and Heart and Lung Act.
   - Please explain the circumstances under which Unemployment Compensation may or may not be granted.
   - Why do you believe you should be selected for this position?
   - Do you have any questions for us?

Musser and Palmer conferred for fifteen minutes and then selected Malone. Moore appealed his non-selection, alleging race and age discrimination and violation of civil service rules.

The Commission found that SAP is computer software purchased by the Commonwealth to allow it to deliver services more efficiently, including those related to human resources. In 2004 the Department directed Musser to reorganize the Bureau of Human Resources to integrate payroll transactions and benefits, and in 2005 they were grouped together into the Employee Services Division. Miller worked in the Bureau and served as its workers' compensation (WC) coordinator, oversaw administration of the supplemental disability programs, served as the UC, ADA and FMLA coordinator, trained supervisory personnel on disability programs and the State Employee Assistance Program (SEAP) and provided direction to field human resource officers in resolving problems with WC, UC, FMLA and SEAP. He spent 30 to 40 percent of his time on WC and supplemental disability matters and 10 to 15 percent of his time on UC, ADA, FMLA and SEAP matters.

Moore administered the benefits program for injured employees of State penal or correctional institutions under the act known as Act 632, Act of December 8, 1959, P.L. 1718, *as amended,* 61 P.S. §§ 951–952; supervised an HR Analyst 2 handling claims under the act known as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638; filed WC claims through SAP; handled UC claims; conducted training on SAP, WC, FMLA and SEAP; answered ADA questions from the field facilities; and acted as a SEAP coordinator.[2] The Commission made no specific findings as to Malone's functions and duties as an HR Analyst 3, but the record shows that she participated in developing and maintaining SAP benefit business processes and provided technical assistance to others in state government.

Palmer testified that in January 2004 the Department implemented SAP to deliver its service more efficiently; that after implementation the benefits area exploded due to the requirement to input data from the benefits side into SAP; and that Department employees turned to Malone in her HR Analyst 3 position at the Office of Administration for answers to transactional questions. Also, Palmer considered Malone's experience in her current position and her understanding of the "global" impacts of how things had to be worked in the office. Musser testified that Malone was the "go-to person" for the entire benefits structure for Commonwealth agencies

March 23, 2006 Hearing, Exhibit AP–10; R.R. at 326a–338a.

2. The Commission found in Finding of Fact No. 20 that Moore had the following duties:

- is primarily responsible for administering the Act 632 program, which includes accepting or denying claims, and being involved in any subsequent litigation[ ];
- supervises an HR Analyst 2 who handles Heart and Lung Act claims;
- reviews the accuracy of the disability benefit transactions on SAP;
- monitors Workers Compensation and paid injury leave programs, which includes understanding how they mesh and how various labor agreements affect them;
- filing Workers Compensation claims through SAP, handling transactions resulting from an approved claim, and conducting training on SAP and Workers Compensation;
- handling UC claims, which includes representing the appointing authority at hearings;
- and answering ADA questions from the " 'field facilities,' " conducting FMLA and SEAP training, and acting as the SEAP coordinator for the appointing authority's central office.

and that her ability made her the most suitable candidate. Musser and Palmer testified that they selected Malone because of her broader HR experience, including her SAP experience. They acknowledged that she lacked supervisory experience and that her answers to the questions were not flawless.

The Commission did find that none of the interview questions addressed the candidates' SAP experience and that SAP skills were not mentioned in the job description for the HR Analyst 4 position. The Commission found, however, that the appointing authority wanted someone who could administer employee benefits and handle the demands placed on the Department by SAP and that Malone obviously impressed the interview panel with her background and expertise in benefits and SAP. Despite its findings in this regard, the Commission rejected Moore's argument that Malone's selection was based on her experience and skills in SAP, which was not related to the job description or to the questions. The Court notes the following Commission findings regarding Malone's responses to the interview questions: Malone stated that she lacked supervisory experience; she indicated that she knew how to process WC claims on the computer but would need a "brush up" because she had not administered such claims for two years; she offered a general explanation of FMLA but failed to list the three types; and as to UC she failed to offer a detailed explanation. Nonetheless, the Commission credited testimony of Musser and

Palmer that they selected Malone for legitimate non-discriminatory reasons based on her experience and skills related to SAP.

In addition, the Commission found that the Department committed no procedural error when it selected Malone, thus rejecting Moore's argument that the Department violated Civil Service Commission Rule 97.16, 4 Pa.Code § 97.16, regarding the requirement that an appointing authority's assessment of certified eligibles be based upon job-related criteria, and violated Management Directive 580.19, regarding the requirement for identifying general job criteria in a vacancy notice prior to conducting interviews. The Commission concluded that Malone was afforded no preferential treatment despite her late application but that if any preference did exist it was *de minimis*. Ultimately, it dismissed Moore's appeal.[3]

## II

■ Section 905.1 of the Civil Service Act (Act)[4] provides as follows:

No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations[,] because of labor union affiliations or because of race, national origin or other non-merit factors.

Two categories of discrimination exist that may be appealed to the Commission. The

3. The Court's review of the Commission's decision is limited to determining whether constitutional rights have been violated, errors of law have been committed or its findings are supported by substantial evidence. *Cola v. State Civil Service Commission (Department of Conservation and Natural Resources)*, 861 A.2d 434 (Pa.Cmwlth.2004). In civil service cases, the Commission is the sole fact finder

and has the exclusive authority to assess witness credibility and to resolve evidentiary conflicts. *Hetman v. State Civil Service Commission (Berks County Children and Youth)*, 714 A.2d 532 (Pa.Cmwlth.1998).

4. Act of August 5, 1941, P.L. 752, *as amended*, added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a.

categories include "traditional discrimination" and "technical discrimination." The former encompasses discrimination claims based upon factors such as race, sex and national origin, and the latter encompasses claims based upon procedural violations under the Act and related regulations. *See Price v. Luzerne/Wyoming Counties Area Agency on Aging*, 672 A.2d 409 (Pa. Cmwlth.1996).

The Court adopted the standard of proof for traditional discrimination claims initiated under Section 905.1 of the Act as enunciated in *Henderson v. Office of the Budget*, 126 Pa.Cmwlth. 607, 614–615, 560 A.2d 859, 863 (1989) (quoting *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 131, 532 A.2d 315, 319 (1987)):

> If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's *prima facie* case stands determinative of the factual issue of the case.... If, however, the defendant offers a non-discriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard.... Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.'

*See also Masneri v. State Civil Service Commission (Western Center, Department of Public Welfare)*, 712 A.2d 821 (Pa. Cmwlth.1998); *Department of Health v. Nwogwugwu*, 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991). It is settled law that the *prima facie* case cannot be an onerous one, "[g]iven the critical role of circumstantial evidence in discrimination proceedings[.]" *Henderson*, 126 Pa.Cmwlth. at 616, 560 A.2d at 864.

No showing of discriminatory intent is required by the complainant in non-selection for promotion cases brought under Section 951(b) of the Act, added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(b), alleging a technical violation of the Act, which constitutes discrimination *per se*, generally referred to as procedural error or procedural discrimination. *Price*; *Pronko v. Department of Revenue*, 114 Pa.Cmwlth. 428, 539 A.2d 456 (1988). For a complainant to gain some type of relief, the complainant must present evidence that he or she "was, in fact, harmed because of the technical non-compliance with the Act *or* evidence that because of the peculiar nature of the procedural impropriety [the complainant] *could have* been harmed but there is no way to prove that for certain." *Pronko*, 539 A.2d at 462 (emphasis in original).

Moore argues that the Commission failed to make findings pertaining to the essential functions and duties of the HR Analyst 4 position, which required substantial expertise and experience in the Department's benefits programs, and that the Commission's failure was probably by design inasmuch as its omission obscures the lack of Malone's ability to perform the functions and duties of the HR Analyst 4 position and the far superior abilities that Moore possessed. As well, the Commission erred in holding that Moore failed to meet his burden of proof when the evidence shows that he had more than abundant experience and knowledge, that the Department's proffer of Malone's expertise

in SAP as a non-discriminatory reason for her selection was merely a pretext and that the record lacks substantial evidence to show that SAP is merit related.

Moore next argues that technical discrimination occurred by virtue of the Department's failure to disclose in the job description and interview questions that knowledge of SAP was one of the criteria for the HR Analyst 4 position. Moreover, he was harmed by the Department's failure to disclose the evaluative criteria because he was precluded from highlighting his SAP experience, which included his training of other employees in SAP transactions for WC claims. Moore asserts that Management Directive 580.19(4)(b) required the Department to identify the general selection criteria in the vacancy notice, and he also contends that the Department erred in interviewing Malone despite her untimely application.

Based on the Commission's assessment, Moore failed to prove that the race or age distinctions between himself and Malone and the differences in their experience "made [Moore] so obviously a better choice for the HR Analyst 4 position." Commission's Adjudication, at 18. As a consequence, the Commission was not persuaded that Moore's non-selection resulted from discrimination against him. Nevertheless, the Commission's adjudication shows that it failed to make findings of fact pertaining to the functions and duties of the HR Analyst 4 position, to make findings as to Malone's functions and duties in her current HR Analyst 3 position and to make findings as to whether Malone possessed the necessary experience and knowledge to perform the HR Analyst 4 functions and duties.

■ More important is the fact that the Commission made no findings and avoided any discussion of whether Moore satisfied the initial burden that must be met in traditional discrimination cases, *i.e.*, whether he established a *prima facie* case of discrimination by presenting credible testimony regarding his far superior experience and knowledge over the selected candidate and other pertinent evidence to demonstrate that more likely than not discrimination has occurred. Instead, the Commission proceeded directly to an assessment of the Department's explanation for its decision and concluded that the Department established legitimate non-discriminatory reasons for selecting Malone over Moore.

■ Case law unequivocally establishes that it is only after a *prima facie* case of discrimination has been shown that the burden shifts to the employer to offer non-discriminatory reasons for its action, at which point the presumption of discrimination arising from the complainant's *prima facie* case drops from the case. *See Henderson.* Assuming that the employer rebuts the complainant's *prima facie* case, the complainant must then establish by a preponderance of the evidence that the reason proffered by the employer for its actions is a mere pretext for the employer's discriminatory conduct. *See Nwogwugwu* (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The burden of persuasion, however, remains throughout the proceedings upon the complainant. *Id.* When this standard of proof is applied, the Commission may then evaluate the entire body of the evidence under the preponderance of the evidence standard.[5] *Id.*

---

5. A "preponderance of the evidence" is such evidence that leads a fact finder to find that the existence of the contested fact is more probable than its nonexistence. *See A.B. ex rel. Bennett v. Slippery Rock Area School Dist.,* 906 A.2d 674 (Pa.Cmwlth.2006). Moreover, a

■ The Commission failed to render crucial findings of fact necessary to evaluate this case under the standards articulated in *Henderson* and *Nwogwugwu*. Also, the Commission erred when it concluded that the Department committed no procedural error when it failed to provide prior notice of the evaluative criteria in the vacancy notice for the HR Analyst 4 position. Absent the proper performance of its duty, the Commission's order cannot stand. Rather, the Court is compelled to vacate the Commission's order and to remand for it to follow the correct standard of proof, to apply the proper burden of proof upon Moore, to make the necessary findings of fact, including whether Moore suffered harm due to the Department's failure to give prior notice of all evaluative criteria, and to issue a new decision.

### ORDER

AND NOW, this 24th day of April, 2007, the Court vacates the order of the State Civil Service Commission and remands this matter for a new decision in accordance with the foregoing opinion.

Jurisdiction is relinquished.

complainant may succeed in proving a discrimination claim directly by persuading the court (or agency) that a discriminatory reason more likely than not motivated the employer or indirectly by showing that its proffered explanation is unworthy of belief. *Nwogwugwu*.