# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Public Welfare,                  :
                                    Petitioner :
                                               :
              v.                               :        No. 846 C.D. 2013
                                               :        Submitted: November 8, 2013
State Civil Service Commission                 :
(Butler),                                      :
                                   Respondent  :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                           **FILED:  July 21, 2014**


Petitioner Department of Public Welfare (DPW) petitions for review of an order of the State Civil Service Commission (Commission).[1]   The Commission sustained the appeal of Edward M. Butler (Butler), which challenged the downward reclassification of his position with DPW from Aging Services Specialist to Human Services Program Specialist.  For the reasons set forth below, we affirm.

The facts as found by the Commission are as follows.  Prior to July 2007, Butler worked within the classified service with the Department of

---

[1] By order dated November 1, 2013, this Court precluded Respondent from filing a brief in this matter.

Labor & Industry, occupying the position of Vocational Rehabilitation Specialist at pay scale group 8. (Finding of Fact (F.F.) nos. 3-4.) At some point in time, Butler and Jay Bausch, an employee in DPW's Human Resources Office, discussed a position within the senior management service with DPW. (F.F. no. 5.) Butler and Mr. Bausch specifically discussed how Butler's acceptance of the position would affect Butler's 16 years of service with civil service status. (*Id.*) During the conversation, Mr. Bausch assured Butler that Butler could take a leave of absence from civil service and then an extended leave of absence to accept the senior management service position, which meant that Butler would have a right to return to an equivalent civil service status position with DPW at pay scale group 8 when his leave ended. (F.F. no. 6.)

After working as the Executive Director for a year, Butler became concerned that he would not get an extension of his civil service leave of absence and, thus, not retain his right to return to a pay scale group 8 civil service position. (F.F. no. 13.) In March 2009, Butler exercised his return right and was placed into the position of Aging Services Specialist at pay scale group 8, with a salary save to

Butler was eventually selected for the position, and he entered the senior management service with DPW as an Executive Assistant at pay scale group 9, with an approved one-year leave of absence from the civil service. (F.F. nos. 7-9.) Butler began working in this position on July 7, 2007, with the working job title of "Executive Director, Governor's Cabinet and Advisory Committee on People with Disabilities" (Executive Director). (F.F. nos. 10, 12.) Butler's appointment letter provided that "[he] will have return rights to any class and status previously held, or to any class and status at the same or lower level for which [he is] qualified." (F.F. no. 11.)

allow him to retain his pay scale group 9 salary, within DPW's Office of Long-Term Living's (OLTL) Bureau of Individual Support. (F.F. nos. 14-15.) By letter dated May 8, 2009, Butler was returned to the pay scale group 8 civil service classification of Aging Services Specialist with the OLTL, with the salary save.[2] (F.F. no. 15.)

When Butler returned to his Aging Services Specialist position with DPW, the Executive Director position was not eliminated. (F.F. no. 19.) In fact, from May 2009 through July 2011, Butler performed the job duties of both an Aging Services Specialist and the Executive Director. (*Id.*) In May 2011, Butler was relocated out of OLTL, and he exclusively assumed the duties of Executive Director. (F.F. no. 20.) Subsequently, on October 26, 2011, Butler received a letter thanking him for his service as Executive Director and advising him that he would be returning to DPW as an Aging Services Specialist in OLTL. (F.F. no. 22.) Butler returned to this position in November 2011, at which point he ceased to perform Executive Director job duties. (*Id.*) On May 23, 2012, Butler was provided with a position description for Aging Services Specialist, to which he added the following information: "Pay Scale 08 per return rights and

---

[2] By way of further background, OLTL operates under a "dual deputate," in that some of its staff are employees of the Department of Aging (Aging) and some are employees of DPW. (F.F. no. 16.) DPW and Aging both have employees performing essentially the same function in OLTL's Bureau of Direct Services, but each agency uses its own classification for its own employees who work there. (F.F. no. 17.) Specifically, DPW uses the classification of Human Services Program Specialist, at pay scale group 7, and Aging uses the classification of Aging Services Specialist, at pay scale group 8. (F.F. nos. 17, 33.) When DPW needed to find a pay scale group 8 civil service classification for Butler, it placed him in OLTL as an Aging Services Specialist, even though this was a classification that, until that point, had been used exclusively by Aging. (F.F. no. 18.) Moreover, this classification was not the same classification that DPW used for three of its other employees in OLTL doing similar work. (*Id.*)

documentation from DPW in accordance with Civil Service." (F.F. no. 24.) Butler then signed the document and returned it to his supervisor, Aging Services Supervisor Brian Lester. (*Id.*)

At some point in time, three OLTL employees, who were classified as Human Services Program Specialists at pay scale group 7, requested desk audits,[3] because they felt that they were performing the same work as the Aging Services Specialists, who were pay scale group 8 employees. (F.F. no. 25.) Romaine Yeager, Human Resource Analyst, completed the desk audits and determined that the employees were properly classified as Human Services Program Specialists at pay scale group 7. (F.F. no. 26.) In June or July 2012, Mr. Lester told Butler that his position was going to be desk audited. (F.F. no. 27.) Ms. Yeager performed the desk audit of Butler's position, after which she advised Butler that if he was reclassified from a pay scale group 8 Aging Services Specialist to a pay scale group 7 position, it would provide him with "a whole array of opportunities." (F.F. nos. 27, 30.) Ms. Yeager also stressed that Butler would be receiving a salary save. (F.F. no. 30.)

By letter dated August 14, 2012, Butler was informed that his position was reclassified downward from an Aging Services Specialist to a Human Services Program Specialist at pay scale group 7 with a salary save.[4] (F.F. no. 31.) On

---

[3] It is not clear whether the audits and subsequent appeals were either initiated or resolved before or after Butler's return to OLTL in November 2011. (Reproduced Record (R.R.) at 132a n.2.)

[4] Butler was granted a salary exception, as his salary was above the pay scale for pay scale group 7. (F.F. no. 35.) Ms. Yeager explained that Butler was granted a salary save in accordance with the applicable management directives because "you don't want to penalize an **(Footnote continued on next page…)**

4

August 20, 2012, Butler received an email advising him that his reclassification was completed, with his description for Human Services Program Specialist attached. (F.F. no. 38.) Aside from the job title, Butler's position description as an Aging Services Specialist was "basically the same" as his position description as a Human Services Program Specialist. (F.F. no. 39.) Notably, the reclassification was not the result of Butler's qualifications, personal abilities, or job performance.[5] (F.F. no. 37.)

On August 28, 2012, Butler requested an appeal of his downward reclassification with the Commission, alleging, *inter alia*, that the reclassification was discriminatory. After granting and holding a hearing on the matter pursuant to Section 951(b) of the Civil Service Act (Act),[6] the Commission issued an adjudication and order sustaining Butler's appeal. In so doing, the Commission reasoned that if it only evaluated the singular transaction that occurred in August 2012, when Butler was reclassified[7] as the result of a desk audit, it would

---

**(continued…)**

employee for management assigning [him] different work if it turns out that [he is] working at a lower [classification] level." (F.F. no. 32.)

[5] The Commission further found that the change to a lower pay scale group may affect Butler's ability to seek advancement to other higher class civil service positions, but it does not preclude Butler from advancing to higher-classified civil service positions in the future. (F.F. no. 34.) The Commission also found that Butler's future salary may be affected for future promotional activity because of the salary exception. (F.F. no. 36.)

[6] Act of August 5, 1941, P.L. 752, *as amended*, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(b).

[7] Reclassification is addressed in Section 707.1 of the Act, Act of August 5, 1941, *as amended*, added by the Act of June 26, 1989, P.L. 47, 71 P.S. § 741.707a, which provides:

When an employe's job changes or the Executive Board changes a classification and a reallocation of the position becomes

**(Footnote continued on next page…)**

5

be compelled to conclude that no procedural impropriety occurred. (R.R. at 136a.) Nevertheless, the Commission observed that Butler's situation was unique. (*Id.*) The Commission specifically noted that Butler was recruited to work for DPW with a promise that he would be afforded the protections offered to him as a senior management service appointment on an approved leave of absence from his former position in the protected classified service. (*Id.*) The Commission explained that it was tasked with determining whether that promise was kept and, if not, if the resulting downward reclassification was procedurally improper. (*Id.* at 136a-37a.)

The Commission continued by explaining that documents produced at the hearing suggested that the downward reclassification was technically transacted in May 2009. (*Id.* at 137a.) Nevertheless, undisputed testimony and other documents in the record indicated that Butler continued to serve as Executive Director until October 26, 2011, when he was thanked for his service and returned to work exclusively as an Aging Services Specialist in OLTL. (*Id.*) The Commission concluded, therefore, that October 26, 2011, was the date Butler actually returned to civil service employment with regular status. (*Id.*) The Commission further determined that based on the factual circumstances, DPW knew or should have known that Butler was probably over-classified at the time Butler was returned to the classification of Aging Services Specialist. (*Id.* at 139a.) Moreover, the Commission observed that in testifying about Butler's

---

**(continued…)**

necessary, the employe shall be reclassified to the new classification provided the employe meets the established requirements for the new classification. This reclassification, if it is to a lower level, shall not be construed as a demotion.

6

salary save, Ms. Yeager all but conceded at the hearing that DPW had prior knowledge that Butler would inevitably be reclassified downward based on his assigned workload. (*Id.*)

The Commission reasoned that Butler's right to return to a pay scale group 8 classification was mandatory under Management Directive 580.30 and that if an appropriate position in an existing classification could not be identified by DPW, then it was obligated to establish one. (*Id.*) The Commission observed that although no testimony was offered on this point, it seemed self-evident that this is what DPW intended to accomplish in May 2009, when it "established" the Aging Services Specialist classification as a unique DPW classification for Butler to return to when his service as Executive Director ended. (*Id.*) In this case, the Commission explained, as soon as DPW realized the position it had established for Butler might become subject to a downward reclassification, it was obligated to either: (1) not implement the downward reclassification at all, (2) find another suitable pay scale group 8 classification for Butler, or (3) establish a new pay scale group 8 classification for Butler. (*Id.* at 139a-40a.)

The Commission concluded that Butler had presented sufficient evidence to establish that his downward reclassification was procedurally improper in violation of Management Directive 580.30 and his protected rights as an employee in the senior management service. (*Id.* at 140a.) The Commission also concluded that Butler was harmed by this technical violation, finding Butler credible that the downward reclassification adversely impacted his potential to seek other Commonwealth employment and his retirement options. (*Id.*) Thus, the Commission concluded that Butler had presented evidence establishing procedural

7

discrimination in violation of Section 905.1 of the Act.[8]  (*Id.*)  The Commission, therefore, entered an order sustaining Butler's appeal, thereby overruling DPW's downward reclassification of Butler and directing DPW to reinstate Butler to a pay scale group 8 classification using one of the three options described in the adjudication.  (*Id.* at 140a-41a.)  The Commission further directed DPW to adjust Butler's employment records to reflect that he has been employed continuously in a pay scale group 8 classification from August 14, 2012, to the present.  (*Id.* at 141a.)  DPW then appealed to this Court.

On appeal,[9] DPW essentially argues that the Commission (1) abused its discretion in adjudicating Butler's right of return to the classified service, (2) erred by capriciously disregarding evidence establishing that Butler returned to the classified service in 2009,[10] (3) erred in concluding that the downward

---

[8] Act of August 5, 1941, P.L. 752, *as amended*, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a.  Section 905.1 of the Act provides:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

[9] This Court's standard of review of an order of the Commission is limited to considering whether substantial evidence supports necessary factual findings, whether an error of law was committed, or whether a violation of constitutional rights occurred.  2 Pa. C.S. § 704.

[10] DPW also argues that the Commission erred by capriciously disregarding evidence establishing that Butler returned to the classified service in conformity with the law.  As demonstrated by our discussion below, notwithstanding its observations as to Butler's return to the classified service, the Commission did not conclude that DPW failed to return Butler to the classified service in conformity with the law.  Rather, the Commission concluded that the *reclassification* of Butler's position violated his *right* of return.

8

reclassification of Butler's position violated the law, and (4) erred in concluding that DPW engaged in procedural discrimination.

We first address DPW's argument that the Commission abused its discretion in adjudicating Butler's right of return to the classified service. DPW argues that the only issue appealed to the Commission was the reclassification of Butler's position. DPW contends that by using Butler's appeal of his reclassification to adjudicate Butler's right of return to the classified service, which Butler exercised long before the reclassification, the Commission improperly circumvented the 20-day time limitation set forth for bringing appeals under Section 951(b) of the Act. DPW argues that permitting such action by the Commission would create uncertainty in the administration of the Commonwealth's operations and go against the purposes of the Act. DPW further argues that although Butler could have challenged any improprieties in DPW's return of Butler to the classified service as an adverse personnel action in and of itself, he was still required to appeal within 20 days of the accrual of that right and failed to do so.

We disagree that in deciding Butler's appeal, the Commission improperly adjudicated Butler's right of return to the classified service in contravention of the 20-day limitation set forth in Section 951(b) of the Act. Section 951(b) provides, in part, that "[a]ny person who is aggrieved by an alleged violation of section 905.1 of this act may appeal in writing to the commission within twenty calendar days of the alleged violation." 71 P.S. § 741.951(b). Simply stated, as evidenced by the facts of this case, there was no adverse

9

personnel action for Butler to appeal until DPW reclassified Butler's position.[11]  It is undisputed that Butler timely appealed the reclassification, alleging that it was discriminatory.  The Commission clearly decided that issue, concluding that Butler's "*downward reclassification* was improper in violation of [Management Directive] 580.30 and his protected rights as an employee in the senior management service."   (R.R. at 140a (emphasis added).)   Although the Commission based the violation on Butler's right of return, this circumstance does not compel a conclusion that the Commission circumvented the 20-day limitation in Section 951(b) of the Act in doing so.  An individual's exercise of his right to return to the classified service does not necessarily result in immediate termination of that right, particularly under the facts of this case, such that a subsequent personnel action cannot be found to be discriminatory for violating that right as a result of the 20-day time limitation in Section 951(b).  The Commission, therefore, did not abuse its discretion in adjudicating Butler's right to return to the classified service.

We next address DPW's argument that the Commission erred by capriciously disregarding evidence establishing that Butler returned to the classified service in 2009.  DPW argues that the Commission ignored DPW's official notice to Butler of his return from the senior management service to the classified service, dated May 8, 2009, and the parties' stipulations to the fact that Butler had exercised his right of return to the classified service in 2009.  DPW contends that the Commission provided no rationale for discrediting this evidence,

_____

[11] Consequently, Butler could not have appealed DPW's initial return of Butler to the classified service as a separate adverse personnel action in and of itself.

10

instead asserting that testimony and other evidence established that Butler remained in the senior management service position until October 2011. DPW argues that, as a consequence, the Commission's determination that the reclassification of Butler's position violated his right of return is premised on the erroneous belief that Butler did not actually return to the classified service until October 2011.

> The Commission did not err by capriciously disregarding evidence:

> > [T]his Court may conclude that an adjudicator has capriciously disregarded competent evidence when the unsuccessful party below has presented "overwhelming evidence" upon which the adjudicator could have reached a contrary conclusion, and the adjudicator has not satisfactorily addressed that evidence by resolving conflicts in the evidence or making credibility determinations that are essential with regard to the evidence.

> > In other words, where there is strong "critical" evidence that contradicts evidence supporting a contrary determination, the adjudicator must provide an explanation as to how it made its determination. The ultimate question is whether an adjudicator "has failed to give a proper explanation of overwhelming critical evidence."

*Grenell v. State Civil Serv. Comm'n (Franklin Cnty.)*, 923 A.2d 533, 538 (Pa. Cmwlth. 2007) (citation omitted) (quoting *Frog, Switch & Mfg. Co. v. Pa. Human Relations Comm'n*, 885 A.2d 655, 667 (Pa. Cmwlth. 2005)). "Further, the express consideration and rejection of evidence does not constitute capricious disregard of evidence." *Balshy v. Pa. State Police*, 988 A.2d 813, 836 (Pa. Cmwlth. 2010).

Here, the Commission found that in March 2009, Butler exercised his return right and was placed into the position of Aging Services Specialist, at pay

scale group 8 with a salary save within OLTL's Bureau of Individual Support. (F.F. no. 14.) The Commission based this finding on the parties' joint stipulation to this fact. (*Id.*; R.R. at 22a.) The Commission further found that by letter dated May 8, 2009, Butler was returned to the pay scale group 8 civil service classification of Aging Services Specialist with the salary save within OLTL. (F.F. no. 15.) The Commission based this finding on the May 8, 2009 letter itself and testimony from the hearing. Citing these findings and the May 8, 2009 letter, the Commission reasoned that Butler's return to the Aging Services Specialist position was technically transacted in May 2009. (R.R. at 137a.) The Commission further observed, however, that "undisputed testimony and other documents in the record indicate [Butler] continued to serve as Executive Director until October 26, 2011, when he was thanked for his service and returned to work exclusively as an Aging Services Specialist in [OLTL]." (*Id.*) In support of this observation, the Commission cited its findings relating to Butler's continued performance of Executive Director duties and service in that capacity after May 2009, which were based on the hearing testimony and the October 26, 2011 letter issued by DPW. (*Id.*) The Commission concluded, therefore, that October 26, 2011, "accurately identifies the date [Butler] was actually returned to civil service employment with regular status." (*Id.*)

Based on the above, it is clear that the Commission did not capriciously disregard the evidence DPW identifies in its argument. Rather, the Commission considered that evidence and determined that Butler's return *technically* occurred in May 2009. The Commission, however, continued by considering other evidence that demonstrated that Butler continued to work as Executive Director until October 2011. The Commission concluded that, based on

12

that evidence, Butler *actually* returned to the classified service in October 2011. In light of the Commission's analysis, we conclude that the Commission sufficiently explained its determination as to Butler's date of return to the classified service. Thus, DPW is not entitled to reversal of the Commission's decision on this basis.[12]

Next, DPW argues that the Commission erred in concluding that the downward reclassification of Butler's position violated the law. DPW's argument is twofold. First, DPW contends that the Commission made an incorrect assumption not supported by the record in concluding that the reclassification violated Butler's right of return because DPW "knew or should have known [in October 2011] that [Butler] was probably over-classified" based on the work performed by employees holding the position of Human Services Program Specialist. (Petitioner's Br. at 16-17; R.R. at 140a.) Second, DPW contends that neither Management Directive 580.30 nor the Act prohibits the reclassification of positions held by employees who have returned to the classified service following a leave of absence, and neither specifies any time period during which an agency must wait following an employee's return from a leave of absence before auditing a class of positions. Consequently, and regardless of when Butler is deemed to have returned to the classified service, the reclassification did not violate the law.

With regard to DPW's first contention, DPW argues that Ms. Yeager's testimony demonstrates that DPW did not know, nor could it have known, that Butler was or would be over-classified in the Aging Services

---

[12] Although we conclude that the Commission did not err in determining that Butler returned to the classified service in 2011, we also note that whether Butler returned to service in 2009 or 2011 is irrelevant to our analysis of whether the downward classification violated Butler's return rights.

13

Specialist position. To the extent that DPW's argument constitutes a substantial evidence challenge, we reject it.[13] The Commission found that although DPW returned Butler to the Aging Services Specialist position at pay scale group 8, it was undisputed that "other DPW employees doing similar work in the same bureau office and at the same location[] were classified as Human Services Program Specialists, pay scale group 7." (R.R. at 138a-39a.) The Commission based this determination on the undisputed findings regarding DPW's and Aging's classifications of positions in OLTL and DPW's use of Aging's classification for Butler, notwithstanding its use of a different classification for other employees. (F.F. nos. 17-18.) These facts support the Commission's finding that at the time Butler returned to the Aging Services Specialist position, DPW knew or should have known that he was probably over-classified, "given the fact that the work assigned to him was lower level work under [its] own classification criteria as applied to the other employees of DPW already working there." (R.R. at 139a.) Further, Ms. Yeager testified that after OLTL was formed, the work being done at the office "matured" over time, and "it became evident" that the Human Services

---

[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shade v. Pa. State Civil Serv. Comm'n (Pa. Dep't of Transp.)*, 749 A.2d 1054, 1056 n.5 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 52 (Pa. 2000). The Commission is the sole fact finder in civil service cases, and it is axiomatic that the Commission, not this Court, possesses the exclusive authority to assess witness credibility, weigh evidence, and resolve evidentiary conflicts. *Bosnjak v. State Civil Serv. Comm'n*, 781 A.2d 1280, 1286 (Pa. Cmwlth. 2001); *Shade*, 749 A.2d at 1056. Thus, this Court will not disturb the Commission's determinations regarding credibility or weight of the evidence. *Bosnjak*, 781 A.2d at 1286. In reviewing the Commission's decision, this Court must view the evidence and all reasonable inferences arising therefrom in the light most favorable to Butler as the prevailing party below. *See id.*

14

Program Specialists and Aging Services Specialists "were all doing the same work." (R.R. at 95a-96a, 109a.) This resulted in the Human Services Program Specialists' request for a desk audit, which audit revealed that the Human Services Program Specialists were properly classified as such. (*Id.* at 96a.) Ms. Yeager also testified that with regard to Butler's downward reclassification, "[m]anagement assigned him work that was comparable to the Human Services Program Specialist[,] which resulted in a lower pay scale group. So in those instances based upon the Management Directives that [she is] guided by, there is a salary save because you don't want to penalize a[n] employee for management assigning [him] different work if it turns out that [he is] working at a lower level." (R.R. at 100a-01a.) Contrary to DPW's assertions, this testimony supports the Commission's determinations that DPW knew or should have known that Butler was probably over-classified as an Aging Services Specialist and that his position would inevitably be reclassified downward.

With regard to DPW's second contention, Management Directive 580.30, titled "Civil Service Leave of Absence and Return Rights," provides, in relevant part:

> e. An employee on a civil service leave of absence for employment in a position in the Senior Management Service:
>
> > (1) Has a guaranteed right of return to a position not below the last pay scale group and civil service status held in the classified service prior to the civil service leave of absence. Should a comparable position not exist at the time of return to the classified service, the appointing authority must establish a position not below the employee's pay scale group and civil service status prior to entering the Senior Management Service.

15

Management Directive 580.30(5)(e)(1).[14]    Notably, DPW is correct in that Management Directive 580.30 and the Act do not expressly prohibit the reclassification of positions held by employees who have returned to the classified service following a leave of absence, and that neither specifies a time period during which an agency must wait following an employee's return from a leave of absence before auditing a class of positions.

Notwithstanding the above, however, "[w]e note that this court has held that, as an administrative agency, the Commission is regarded as an expert on matters within its own jurisdiction." *Price v. Luzerne/Wyoming Cntys. Area Agency on Aging*, 672 A.2d 409, 413 (Pa. Cmwlth. 1996), *appeal denied*, 688 A.2d 174 (Pa. 1997).    In concluding that the downward reclassification of Butler's position violated the law, the Commission reasoned:

---

[14] Moreover, Section 807.1 of the Act, Act of August 5, 1941, P.L. 752, *as amended*, added by the Act of August 27, 1963, 71 P.S. § 741.808, provides:

> An employe who has been granted a leave of absence at the discretion of an appointing authority shall, upon expiration of the leave of absence, have the right of return to the class and civil service status from which leave was granted, or to any class and civil service status which he previously held, provided such class is contained in the current class plan of the agency, or to any class and civil service status in the same or lower grade, provided that he meets the minimum qualifications given in the classification plan of the agency, provided that in all three instances there is a vacancy with the same appointing authority.  If there is no vacancy to which the employe on leave can be returned, he shall retain priority of return to the class from which the leave of absence was granted for a period of one year following the date of expiration of the leave, and during this time shall have precedence for employment over employes furloughed from the same class.

The record indicates [Butler] served faithfully and did everything asked of him by the appointing authority until his service as Executive Director ended on October 26, 2011. At this point, [Butler] commenced serving full time as an Aging Services Specialist, pay scale group 8, in OLTL. It is undisputed that other DPW employees doing similar work in the same bureau office and at the same location[] were classified as Human Services Program Specialists, pay scale group 7. Therefore, at the time [Butler] was returned to this classification, the appointing authority knew or should have known that [Butler] was probably over-classified as an Aging Service Specialist given the fact that the work assigned to him was lower level work under their own classification criteria as applied to the other employees of DPW already working there. The appointing authority acknowledges that the Human Services Program Specialists in OLTL were audited by the appointing authority, and it was determined that they were properly classified in pay scale group 7 classifications based on the work they were doing. Within months after his return in 2011, [Butler] was advised that his classification was going to be audited also. Indeed, [Ms. Yeager] all but conceded that the appointing authority had prior knowledge that [Butler] would inevitably be reclassified downward based on his assigned workload when she justified his salary save by saying it was appropriate because it would not be fair 'to penalize an employee for management assigning [him] different work if it turns out [he is] working at a lower [classification] level."

(R.R. at 138a-39a (citations omitted)). The Commission further observed that Butler's right to return to a pay scale group 8 classification is mandatory under Management Directive 580.30 and that DPW's actions in reclassifying Butler's position violated that right. (*Id.* at 139a-40a.) In light of the above analysis, which is supported by the evidence of record, and the Commission's expertise on these

17

matters, we hold that the Commission did not err in concluding that the downward reclassification of Butler's position violated the law.[15]

We next address DPW's argument that the Commission erred in concluding that DPW engaged in procedural discrimination.[16] DPW essentially argues that the claims of discrimination Butler asserted in his appeal are meritless. DPW further argues that the Commission's conclusion that the reclassification resulted in discrimination against Butler is unsupported by the evidence. DPW contends that the Commission's conclusion rests on mere inferences regarding DPW's knowledge and intent as to the inevitability of Butler's reclassification, in the absence of any affirmative evidence to support those inferences. Specifically,

---

[15] We note that our holding is limited to the facts presently before us. That is, where the Commission makes supported findings that the appointing authority knew or should have known that an employee who has exercised his right of return would inevitably be reclassified downward subsequent to his return, the resulting reclassification will be held to be improper. As explained by the Commission, in such instances, the appointing authority is obligated to (1) not implement the downward reclassification at all, (2) find another suitable pay scale group classification for the employee, or (3) establish a new pay scale group classification for the employee. (R.R. at 139a-40a.)

[16] In support of this argument, DPW contends that by concluding that DPW's reclassification of Butler's position violated Butler's right of return, the Commission fashioned its own basis for holding that DPW discriminated against Butler. Relatedly, DPW further argues in its brief that it did not have prior notice that Butler's right of return would be at issue in the appeal of his reclassification. DPW, however, failed to raise these issues in its petition for review and, therefore, they are waived. *See United Transp. Union v. Pa. Pub. Util. Comm'n*, 68 A.3d 1026, 1042 (Pa. Cmwlth.) ("Issues not raised in the petition for review will not be addressed."), *appeal denied*, 80 A.3d 779 (Pa. 2013).

Moreover, DPW contends that the record lacks evidence of discrimination in DPW's return of Butler to the Aging Services Specialist position. As explained herein, however, the Commission did not conclude that DPW discriminated against Butler in implementing his initial return to the classified service.

18

DPW argues that the Commission based its conclusion on a misinterpretation of Ms. Yeager's comment to Butler regarding his salary save.

As previously stated, Section 951(b) of the Act permits individuals to appeal personnel actions taken by the Commonwealth to the Commission on the basis of discrimination. There are two categories of discrimination that may be appealed to the Commission: traditional discrimination and technical discrimination. *Moore v. State Civil Serv. Comm'n (Dep't of Corr.)*, 922 A.2d 80, 84-85 (Pa. Cmwlth. 2007). Technical discrimination, which constitutes discrimination *per se*, involves claims based upon procedural violations under the Act and related regulations.[17] *Id.* at 85. "The burden of prosecuting a discrimination appeal under the Act rests with the employee." *Price*, 672 A.2d at 413. "[W]here a technical violation of the Act constitutes the alleged discrimination, no showing of intent is required. The reason for such a holding is that often what has occurred is an administrative error or mistake, and thus intent to discriminate is frequently non-existent." *Id.* (citation omitted). "For a complainant to gain some type of relief, the complainant must present evidence that he or she 'was, in fact, harmed because of the technical non-compliance with the Act *or* evidence that because of the peculiar nature of the procedural impropriety [the complainant] *could have* been harmed but there is no way to prove that for certain.'" *Moore*, 922 A.2d at 85 (emphasis in original) (alteration in original) (quoting *Pronko v. Dep't of Revenue*, 539 A.2d 456, 462 (Pa. Cmwlth.

---

[17] This Court has held that a properly issued management directive has the force and effect of law, and that a technical violation of that management directive is equivalent to a technical violation of the Act, since it implemented sections of the Act. *See Nosko v. Somerset State Hosp.*, 590 A.2d 844, 847 (Pa. Cmwlth. 1991).

1988)).  "Moreover, discrimination cannot be inferred.  There must be affirmative factual support to sustain the allegations." *Price*, 672 A.2d at 413 (citation omitted).

We disagree that the Commission's conclusion is unsupported by affirmative evidence of discrimination.  As demonstrated by our analysis of DPW's third issue on appeal, Ms. Yeager's testimony, in addition to the factual circumstances surrounding Butler's return and subsequent reclassification, supports the Commission's determination that DPW knew or should have known that Butler was probably over-classified and would be inevitably reclassified downward.  Consequently, as discussed above, the Commission correctly concluded that the reclassification violated Butler's right of return under Management Directive 580.30.  Further, DPW does not dispute the Commission's conclusion that Butler was harmed by this technical violation.  Thus, the Commission was correct in concluding that DPW engaged in procedural discrimination against Butler when it reclassified his position.

Accordingly, we affirm the order of the Commission.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Public Welfare,     :
                   Petitioner     :
                                     :
         v.                     :    No. 846 C.D. 2013
                                     :
State Civil Service Commission     :
(Butler),     :
                   Respondent    :

## O R D E R

AND NOW, this 21st day of July, 2014, the order of the State Civil Service Commission is hereby AFFIRMED.

 

 

                                             _____
                                             P. KEVIN BROBSON, Judge