IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brendan M. Tedrick,                          :
                    Petitioner               :
                                             :
        v.                                   :   No. 1830 C.D. 2017
                                             :   Argued:  November 13, 2018
State Civil Service Commission               :
(Commonwealth of Pennsylvania,               :
Department of Labor and Industry),           :
                    Respondent               :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED:  December 7, 2018


        Brendan M. Tedrick (Tedrick) petitions for review of an order of the
State Civil Service Commission (Commission) dismissing his appeal challenging his
non-selection for appointment to the position of Rehabilitation Teacher of the Blind
(VRT)[1] with the Department of Labor and Industry (Department).  We affirm.

----

        [1] The position of Rehabilitation Teacher of the Blind has since been renamed and is now
called Vision Rehabilitation Therapist.  As such, the position will be referred to as VRT throughout
the opinion.

## I.

The pertinent facts are as follows. Tedrick was previously employed as a VRT with the Department's Bureau of Blindness and Visual Services (BBVS) from July 2006 through March 2014. During his employment, Tedrick was active in the union, serving as a committee chair. He also underwent two surgical procedures on his eyes during his employment as a VRT, and while he took several days off after each surgery to recuperate, he never requested any accommodations under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213. During his employment, Tedrick received two overall ratings of "Satisfactory" and two overall ratings of "Commendable" on his Employee Performance Reviews (EPR), and he was not issued any discipline, performance improvement plans or attendance warnings throughout this time.

On April 4, 2014, Tedrick resigned from his VRT position to accept employment with the federal government and he relocated to Florida. He left his employment with the Department in good standing and received references from Vocational Rehabilitation Counselor Giovanna Ochabillo (Ochabillo) and District Manager Lynn Heitz (Heitz), his direct supervisor. Tedrick left his federal government position in October 2014, moved back to Pennsylvania and sought employment again with the Department.

An individual seeking reinstatement to his Commonwealth employment may utilize two separate processes. First, he may submit a Civil Service application, take the examination and be placed on the eligibility list. The Civil Service application does not have any place for an applicant to specify that he is seeking

2

reinstatement. He may also submit his application materials directly to the employer, here BBVS, to bid on the job posting in which he is interested. Notably, a former employee does not have the right to be reinstated to his prior position; he merely may apply for reinstatement if he left Commonwealth employment with regular Civil Service status (in good standing). *See* 4 Pa. Code § 101.54; Management Directive 580.23 from the Governor's Office of Administration, *amended*.

Tedrick utilized the first option and applied for several positions with BBVS through the Commission's website, including that of VRT and Vocational Rehabilitation Counselor (VRC). The job posting for the VRT position specifically stated that candidates could be considered for the vacancy based upon the Civil Service eligibility list, transfer, reassignment, voluntary demotion or reinstatement. (Reproduced Record (R.R.) at 371a-374a.) The job posting contained a link to the Civil Service application as well as instructions for applying directly to the post. (*Id.*)

On December 2, 2014, Tedrick received his Notice of Examination Results for the VRT exam, earning a score of 85. In March 2015, Tedrick was sent an Availability Survey/Interview Notice for a VRT position in Philadelphia, which he completed and submitted on April 9, 2015. He was sent a second notice for a VRT position in Philadelphia on June 15, 2015, which he also completed and returned indicating his interest. In late March or early April 2015, Department Human Resource Analyst Amanda Piro (Piro) received an email from Tedrick stating that he was interested in reinstatement to a VRT position. Piro forwarded this email to BBVS administrators. Piro also spoke with Tedrick over the telephone and advised

him to take the Civil Service test *and* apply directly to the VRT job posting. Tedrick admittedly never applied directly to the posting.

After the job posting for the VRT position closed, Human Resources determined there were no eligible applicants who had applied directly to the post. Therefore, the Options List sent to BBVS indicated that the only applicants to be considered were those from the Civil Service eligibility list, including Tedrick. Three candidates were then interviewed for the VRT position – Allison Zellers (Zellers), A. Aquilino and Tedrick, who interviewed via telephone on June 25, 2015. Prior to their interviews, candidates were instructed to submit an application, photo identification, resume and any other documentation they thought would provide useful information. Tedrick provided the required documentation as well as an EPR from his previous employment as a VRT. All three candidates were provided with a copy of the job description before their interviews and were advised not to use any devices when providing their answers.

Ochabillo, Heitz and Social Work Supervisor Fields (Fields) conducted the interviews, during which the candidates were asked the same questions that Heitz composed. The panel members did not discuss any of the candidates prior to the interviews. All three panel members wrote down the candidates' answers and separately rated their performances.

Of particular note, interview question number five asked the candidates to "[p]lease review and describe your knowledge and experience using iOS devices." (Commission Adjudication (C.A.), Finding of Fact (F.F.) 64.) Tedrick initially

replied, "I don't know what an iOS device is." (C.A., F.F. 65.) During the telephone interview, Tedrick admittedly "Googled" iOS, despite the instructions he was given, and learned it was a software operating system. He was later allowed to expand upon his initial response to question number five and stated that while he had taught a client how to use a notebook, VRTs do not work with iOS devices and it is not their responsibility to teach clients how to use them.

After the interviews were complete, the panelists met to determine who to recommend for hire and all three panelists agreed on their final, overall ratings for the candidates. Tedrick received an overall interview rating of "somewhat deficient," and Aquilino, and Zellers received an overall rating of "acceptable." On or about September 5, 2015, Zellers was selected for the VRT position.

## II.

On September 10, 2015, Tedrick appealed his non-selection to the Commission pursuant to Section 951(b) of the Civil Service Act (Act)[2], requesting

---

[2] Act of August 5, 1941, P.L. 752, *as amended*, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(b). Section 905.1 of the Act pertains to the prohibition of discrimination and provides:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

Added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a.

"[a]n investigation into the hiring procedures at the . . . Department . . . and reinstatement to my former position." (R.R. at 1a.) Tedrick alleged that the Department discriminated against him based upon his labor union affiliations, violation of civil service act/rules and other non-merit factors when it denied his reinstatement and/or selection to the VRT position.

The Commission held that Tedrick failed to establish discrimination under Section 905.1 of the Act and, accordingly, dismissed his appeal. Specifically, after reviewing the record as a whole, the Commission found that while the evidence was enough to meet the initial *prima facie* burden, there was not substantial evidence to establish Tedrick's discrimination claims. Tedrick then petitioned this Court for review.[3]

## III.

There are two types of discrimination that may be appealed to the Commission under Section 951(b) of the Act: "traditional discrimination" and "technical discrimination." *Pronko v. Department of Revenue*, 539 A.2d 456, 462 (Pa. Cmwlth. 1988). "'Traditional' forms of discrimination focus upon such factors

---

[3] Our review of a Commission adjudication is limited to determining whether an error of law was committed or constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pennsylvania Game Commission v. State Civil Service Commission*, 747 A.2d 887, 891 (Pa. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shade v. State Civil Service Commission*, 749 A.2d 1054, 1056 n.5 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 52 (Pa. 2000). We view the evidence and all reasonable inferences arising therefrom in a light most favorable to the party that prevailed before the Commission. *Bosnjak v. State Civil Service Commission*, 781 A.2d 1280, 1286 (Pa. Cmwlth. 2001).

as race, sex or age," while procedural or "'[t]echnical' discrimination involves a violation of procedures required pursuant to the Act or related Rules." *Masneri v. State Civil Service Commission,* 712 A.2d 821, 823 n.3 (Pa. Cmwlth. 1998) (citing *Pronko*, 539 A.2d at 462). Tedrick alleged both types of discrimination before the Commission and in his appeal to this Court and we will discuss each in turn.

## A.

With respect to a claim of traditional discrimination, an employee must initially present a *prima facie* case by producing sufficient evidence that, if believed, indicates more likely than not that discrimination has occurred. *Moore v. State Civil Service Commission*, 922 A.2d 80, 85 (Pa. Cmwlth. 2007) (citations omitted). It is well established that the *prima facie* burden of proof cannot be an onerous one "[g]iven the critical role of circumstantial evidence in discrimination proceedings." *Id.*; *see also Department of Health v. Nwogwugwu*, 594 A.2d 847, 850 (Pa. Cmwlth. 1991). However, mere general and conclusory allegations of discrimination are not adequate and traditional discrimination may not be inferred; rather, the employee must demonstrate affirmative, factual support for the alleged discrimination. *See Allen v. State Civil Service Commission*, 992 A.2d 924, 929 (Pa. Cmwlth. 2010); *Price v. Luzerne/Wyoming Counties Area Agency on Aging*, 672 A.2d 409, 412 (Pa. Cmwlth. 1996), *appeal denied*, 688 A.2d 174 (Pa. 1997).[4]

---

[4] Claims of traditional discrimination based upon an employee's disability include adverse employment actions motivated by prejudice and fear of an employee's known disability, as well as an employer's failure to make reasonable accommodations. *Allen*, 992 A.2d at 932 (citation omitted). Moreover,

> for [an employee] to establish a prima facie case of discrimination
> under the ADA, the [employee] must show: (1) he is a disabled

**(Footnote continued on next page…)**

7

A presumption of discrimination arises from the employee's *prima facie* case which, if not rebutted by the employer, becomes determinative of the factual issue. *Moore*, 922 A.2d at 85; *Nwogwugwu*, 594 A.2d at 850. However, if the employer presents a legitimate, non-discriminatory explanation for the employment action, the presumption drops from the case and the employee must demonstrate, by a preponderance of the evidence, that the proffered reason is merely a pretext for discrimination. *Nwogwugwu*, 594 A.2d at 850 (citation omitted).

Tedrick argues that the Commission erred in denying his traditional discrimination claim because the bulk of evidence established that he was the best, most qualified candidate for hire or reinstatement to the VRT position and that he was not selected or reinstated due to discriminatory, non-merit factors such as gender, disability and union affiliation. However, Tedrick testified that he never needed or requested an accommodation for his visual disability during his employment with BBVS, he did not know if his visual disability was grounds for not hiring him, he never advised Fields about his disability, and no one stated he was denied the VRT job because of a visual disability. Ochabillo and Heitz both testified that they were unaware of Tedrick's visual disability. Moreover, Heitz testified that she was not aware of any issues related to Tedrick's union service, and Ochabillo testified that she

---

**(continued…)**

> person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.

*Id.* (quoting *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999)).

had no issues with his prior union affiliation. The Commission found the testimony of Ochabillo and Heitz to be credible. As the sole fact finder in civil service cases, the Commission has exclusive authority to assess witness credibility and resolve evidentiary conflicts; therefore, we will not disturb the Commission's determinations on these issues. *See Moore*, 922 A.2d at 84 n.3; *Bosnjak*, 781 A.2d at 1286. Moreover, Tedrick introduced no evidence demonstrating that the Department viewed his prior union affiliation in a negative light or declined to hire him due to his disability or gender; therefore, the Commission properly determined that he failed to meet his burden regarding his traditional discrimination claim.

**B.**

Technical discrimination occurs when a Commonwealth agency, such as the Department, violates the procedures established in the Act or related regulations. *Pronko*, 539 A.2d at 462. While no showing of intent is required with a technical discrimination claim, an employee must show that he was, in fact, harmed because of the procedural violation or that he could have been harmed but there is no way to prove that for certain. *Price*, 672 A.2d at 413 (citing *Pronko*, 539 A.2d at 462).

Tedrick appears to assert two bases for his technical discrimination claim: (1) the Department misrepresented or misstated the eligibility criteria in the VRT job posting by failing to include iOS training as an essential or core duty of the job and by failing to advise applicants that job offers would be made solely on the basis of their interview performance; and (2) issues surrounding the reinstatement process. Tedrick argues that because of these "errors and/or illegalities," he was not put on notice of the criteria, which would be assessed in deciding which applicant to

9

recommend for hire and was placed at a distinct disadvantage from other applicants. We disagree.

Tedrick admits that he did not follow the proper process for reinstatement, as he never responded directly to the VRT job posting. Despite his claims that he was not made aware of the process for reinstatement, Piro credibly testified that she instructed Tedrick to apply directly to the job posting, which indisputably contains specific instructions for how to do so. Tedrick also admits that he was granted an interview, had ample time to respond to the questions, was allowed to go back and amend one of his answers, and was notified that he was not the selected candidate. There is no evidence that Tedrick was harmed or could have been harmed by the fact that his name did not also appear on a list for possible reinstatement because a former employee does not have an inherent right to reinstatement and he was, in fact, granted an interview based upon his Civil Service application.

In addition, Ochabillo, Heitz and Fields gave Tedrick a lower overall rating than the selected applicant, Zellers, due to his performance during the telephone interview. They specifically mentioned Tedrick's contradictory and deficient response regarding iOS devices, his sometimes rambling and unorganized responses to specific questions, his failure to exhibit decision-making skills, and his failure to discuss any leadership qualities, analytical skills or how his education prepared him for the VRT position. The Commission has specifically authorized the use of interviews in determining which eligible applicant to hire. 4 Pa. Code § 97.16. Whether or not the job posting mentioned the importance of the interview process is

irrelevant as Regulation 97.16 put Tedrick on notice and, quite frankly, it is merely common sense. *See Keim v. Department of Health*, 543 A.2d 1261, 1265 (Pa. Cmwlth. 1988). If we were to expand Tedrick's argument to its logical conclusion, there was no need for the Department to even conduct interviews because he had more direct experience with the VRT position than the other candidates did and, therefore, he must be selected for hire. His argument serves to create a right to reinstatement in former Commonwealth employees, which we cannot accept.

As to the interview question regarding iOS devices, pursuant to Management Directive 580.19, a job posting must include a "brief job description." It need not include a detailed and exhaustive list of every discrete task that may be performed by an employee in that particular job. For these reasons, we discern no error in the Commission's conclusion that Tedrick failed to put forth sufficient evidence to demonstrate technical discrimination.

Accordingly, the order of the Commission is affirmed.

_____
DAN PELLEGRINI, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brendan M. Tedrick,                        :
                Petitioner                    :
                                      :
            v.                    :   No. 1830 C.D. 2017
                                        :
State Civil Service Commission             :
(Commonwealth of Pennsylvania,             :
Department of Labor and Industry),         :
                Respondent                   :

# **O R D E R**

AND NOW, this 7th day of December, 2018, the order of the State Civil Service Commission in the above-captioned matter is hereby affirmed.

 

_____

DAN PELLEGRINI, Senior Judge