# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G. Marisa Kelly-Pimentel, Ph.D.,     :
                    Petitioner     :
                                :
        v.                      :    No. 72 C.D. 2016
                                :    Submitted: August 26, 2016
State Civil Service Commission      :
(Department of Corrections),        :
                  Respondent    :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON               FILED: February 1, 2017

       G. Marisa Kelly-Pimentel, Ph.D., (Petitioner) petitions for review of an order of the State Civil Service Commission (the Commission), which dismissed her appeal challenging her non-selection for a promotion to Education Administration Manager (EAM) with the Pennsylvania Department of Corrections (Department). For the reasons that follow, we affirm.

       The factual background is as follows. An EAM is a management position within the Department, involving the oversight of educational programs for correctional institutions in one of three regions in Pennsylvania: the Eastern Region, the Western Region, and Special Education Program Services. The EAM for the Western Region supervises nine correctional institutions. The job posting provided that the minimum training and experience required for the position included one year of experience as an Education Administration Supervisor or six

years of professional experience in education, including at least four years in educational administration, or a combination of experience or training. The duties listed in the job description included assisting the Bureau Director in administrative work, evaluating and planning educational programs, and implementing a long-range strategic plan, among other duties.

From March 20, 2014, to April 3, 2014, the Department posted the position of EAM for the Western Region of Pennsylvania. On March 22, 2014, Petitioner submitted an application for the EAM position. On or about April 1, 2014, Terri Fazio (Fazio), the individual eventually hired to fill the EAM position, also submitted an application. At all times relevant to this matter, the Department employed Petitioner as an Adult Basic Education Teacher at the State Correctional Institution at Greene, Pennsylvania (SCI-Greene). Petitioner, an African-American female, began her career with the Department in 1998 as a Corrections School Principal at SCI-Greene. She later served as an Education Guidance Counselor at the State Correctional Institution at Pittsburgh for two years. Petitioner holds a bachelor's degree, a master's degree, and a Ph.D. in education, in addition to several teaching certifications. Fazio, a Caucasian female, began working for the Department as a regional Staff Assistant on April 13, 2014. Prior to working in that position, Fazio served as a Corrections School Principal at a state correctional institution. Fazio holds a bachelor's degree in secondary education and math and other teaching certifications.

On May 14, 2014, a panel consisting of Executive Deputy Secretary of Corrections Shirley Moore Smeal (Smeal) and Director, Bureau of Correction Education, Steven Davy (Davy) interviewed five of the six candidates for the position, including Petitioner. The same panel interviewed Fazio on

2

May 22, 2014. The panel asked all candidates the same 13 questions involving the candidates' ability to perform job functions, management and education administration experience, experience with budgeting and grants, labor management experience, organizational skills, and what initiatives, goals, and skills the candidate would bring to the position.

After the interviews, Smeal and Davy separately ranked the candidates. Davy stated that he ranked Fazio first because of her knowledge of Department policies, excellent interpersonal skills during the interview, prior work experience, and Fazio's more specific, targeted answers to questions regarding procedures and future initiatives. Smeal stated that she ranked Fazio first because Fazio best identified with the goals of the Bureau of Corrections Education and was better qualified due to her experience as a Staff Assistant. Both Davy and Smeal stated that Petitioner was ranked lower due to her general and unfocused answers to several of the interview questions. Specifically, both Davy and Smeal noted that Petitioner's stated "first mission" as EAM would be to "learn the job." (Certified Record (C.R.) at 579a-81a.)

The panel formally selected Fazio as the first choice hire for the EAM position on May 22, 2014. On May 27, 2014, the Department's Secretary, John E. Wetzel, implemented a hiring freeze within the Department. On June 13, 2014, Davy advised Fazio that she would begin serving as Acting EAM effective July 6, 2014. Davy submitted an Equal Employment Review Certificate for approval by the Office of Equal Employment Opportunity on August 22, 2014. Katherine Peters, an Equal Opportunity Specialist, reviewed the selection process and approved the Equal Employment Review Certificate, which approved Fazio's

3

selection for the position. By letter dated September 11, 2014, the Department formally offered Fazio the permanent EAM position effective September 7, 2014.

On September 9, 2014, Petitioner received an e-mail notifying her that she was not selected for the position. Petitioner subsequently appealed her non-selection to the Commission pursuant to Section 951(b) of the State Civil Service Act (the Act).[1] Petitioner alleged that her non-selection constituted both technical and traditional discrimination. The Commission held hearings on Petitioner's appeal on February 26, 2015, and April 30, 2015. By order dated December 18, 2015, the Commission held that Petitioner failed to establish discrimination under Section 905.1 of the Act[2] and, accordingly, dismissed her appeal. Petitioner petitioned this Court for review of the Commission's decision.

On appeal,[3] Petitioner argues that the Commission erred in failing to conclude that the Department committed technical discrimination. Petitioner also

---

[1] Act of August 5, 1941, P.L. 752, added by the Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. § 741.951(b).

[2] Added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a. Section 905.1 of the Act, relating to prohibition of discrimination, provides:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

[3] Our scope of review of a determination of the Commission is limited to determining whether constitutional rights have been violated or an error of law has been committed and whether necessary findings of fact are supported by substantial evidence. *Williams v. State Civil Serv. Comm'n*, 811 A.2d 1090, 1092 n.1 (Pa. Cmwlth. 2002).

argues that the Commission erred in failing to conclude that the Department committed traditional discrimination.[4]

First, we will consider Petitioner's arguments as they relate to technical discrimination. Technical discrimination exists when a Commonwealth agency, such as the Department, violates the procedures established in the Act or in the Civil Service Rules (Rules). *Pronko v. Dep't of Revenue*, 539 A.2d 456, 462 (Pa. Cmwlth. 1988). In order for the Commission to find that technical discrimination exists, Petitioner must establish (1) that the Department committed a technical violation of the Act or the Rules; and (2) that Petitioner was or could have been harmed by the Department's violation. *Price v. Luzerne/Wyoming Cntys. Area Agency on Aging*, 672 A.2d 409, 412 (Pa. Cmwlth. 1996), *appeal denied*, 688 A.2d 174 (Pa. 1997). Petitioner appears to assert two bases for technical discrimination: (1) that the Department preselected Fazio for the position in violation of the Rules;[5] and (2) that the Department violated the Rules by basing its selection on qualifications that were not included in the criteria set forth in the job posting and answers to questions not asked to all candidates—*i.e.*, that the interview process was flawed.

With regard to technical discrimination based on preselection, Petitioner contends that the evidence presented clearly demonstrates that the

---

[4] Petitioner does not challenge any of the Commission's factual findings.

[5] In support of her contention that the Department engaged in preselection, Petitioner references Section 903 of the Act, 71 P.S. § 741.903, relating to criminal penalties. This matter, however, is not a criminal proceeding implicating Section 903 of the Act. Petitioner's arguments focus on whether the Department engaged in prohibited discrimination under Section 905.1 of the Act. Thus, although some of Petitioner's arguments are couched in terms of Section 903, we will consider them under Section 905.1.

Department preselected Fazio for the EAM position and that the Department's interviews of other candidates were mere pretext. She points to several findings of fact, which she argues compel the conclusion that the Department preselected Fazio for the position. Petitioner argues that the Department ignored her superior educational background and credentials in making its selection.[6] The Commission, however, concluded that the disparity between Fazio and Petitioner's educational background was not persuasive evidence that Fazio was preselected for the position. As noted above, Petitioner has a Ph.D. in education while Fazio holds a bachelor's degree in secondary education and math. Petitioner does not contest that Fazio met the minimum requirements for the position. The job posting for the EAM position did not require a particular degree or any certain type of certification, and it provided that a combination of education and experience would be considered as part of the selection criteria for the position. It did not provide that education level and credentials were the only criteria. Under Petitioner's suggested reasoning, there would have been no reason to interview Fazio at all; instead, the panel simply would have been bound to select the candidate who held the highest degree. Petitioner cites no case law holding that education level and certifications should be given greater weight in hiring decisions than other factors,

---

[6] Petitioner also notes in her brief that Section 2 of the Educator Discipline Act, Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. § 2070.2(a), requires that educators employed by a school entity in the Commonwealth must meet the certification requirements established by the State Board of Education or the Department of Education. Petitioner further notes that Fazio holds only a level I teaching credential to teach secondary math while Petitioner holds a superintendent's certification, among other credentials. This certification requirement and the teaching credentials held by Petitioner and Fazio, however, are wholly irrelevant to the issue before us. An EAM is a management position within the Department, rather than an educator position, and does not require a teaching certification under Section 2 of the Educator Discipline Act.

6

such as work experience or performance during the interview process. Thus, we discern no error in the Commission's conclusion that the disparity between Fazio's and Petitioner's education levels did not demonstrate preselection.

Petitioner next argues that the Department transferred Fazio to a position as a Staff Assistant shortly before the EAM vacancy announcement in order to provide her with experience that would give her an unfair advantage in the selection process. The Commission concluded that Fazio's appointment to the Staff Assistant position was not persuasive evidence that Fazio was preselected for the position. Fazio testified that the duties and responsibilities of a Staff Assistant included conducting quarterly inspections of various institutions and conducting an exit interview with the superintendent and executive staff of the institution. Fazio stated that the Staff Assistant position was part of a program to provide management personnel with a broader perspective on how the Department operates on a statewide level. Petitioner argues that the Department transferred Fazio to the Staff Assistant position essentially to give her an unfair advantage by providing her with the experience of how the Central Office of the Department operates. Davy testified that one of the reasons that Petitioner was ranked fifth out of the potential candidates was due to a lack of familiarity with Central Office procedure. Although it is clear that Fazio's familiarity with the Central Office was advantageous, Petitioner put forth no evidence that Fazio's transfer to the Staff Assistant position was part of any calculated preselection by the Department. The Commission considered Fazio's appointment to the Staff Assistant position and concluded that it did not indicate that she was preselected for the EAM position. We see no error on the part of the Commission.

7

Petitioner also argues that, because the decision to hire Fazio was made on the same day as her interview, the Commission erred in concluding that the panel's quick decision did not indicate preselection. In support of this argument, Petitioner cites *Moore v. State Civil Service Commission (Department of Corrections)*, 922 A.2d 80, 86 (Pa. Cmwlth. 2007). In *Moore*, a Caucasian candidate with a high school degree, who also applied late to the vacancy opening, was promoted over an African-American candidate with a bachelor's degree. Notably, the interviewing panel stated that they discussed the candidates for 15 minutes before making their decision. Aside from the lack of evidence in the instant case of exactly how long the panel debated the candidates' qualifications after the final interview, Petitioner misinterprets our holding in *Moore*. We vacated the Commission's decision in *Moore* for numerous procedural errors: (1) the Commission failed to follow the correct standard of proof; (2) the Commission failed to apply the proper burden of proof to the petitioner; and (3) the Commission failed to make necessary findings of fact, including whether the petitioner suffered harm due to the Department's failure to give prior notice of all evaluative criteria in the position's vacancy posting. We did not, as Petitioner argues here, conclude that the Commission in *Moore* improperly considered certain factual findings, which would compel a conclusion in the case now before the Court that Fazio was preselected for the position.[7]

---

[7] Petitioner also asserts several other facts, such as the location of Fazio's residence, errors in paperwork, and gaps in Fazio's employment history, demonstrate that the Commission erred in failing to find evidence of preselection. The Commission properly addressed each of these facts and found them unpersuasive. Petitioner asserts no compelling reason why the Commission committed an error of law, other than to assert that the facts presented could support an alternative finding. Thus, we find no reason to disturb its determinations on appeal.

To the contrary, here, the Commission concluded that the Department used proper selection procedures in filling the EAM position. The Commission based its decision on the testimony of the interview panelists, the requirements listed in the job posting, and other documents entered into the record by Petitioner and the Department. In their testimony, both Davy and Smeal noted that Fazio was selected based on her greater experience with Department procedures, specific goals and action plans enumerated by Fazio during the interview, and specific, targeted answers to interview questions in contrast to Petitioner's more general and vague responses. The Commission did not find compelling Petitioner's claim of preselection. Thus, the Commission did not err in concluding that Fazio was not preselected for the EAM position.

As to technical discrimination relating to specific flaws in the hiring process, Petitioner first argues that the panel improperly considered knowledge of the Department's Central Office operation procedures, which was not a selection criteria included on the job posting. In support of this argument, Petitioner points to Davy's statement that Petitioner was ranked fifth out of six candidates due, in part, to her lack of knowledge with Central Office operation procedures. In its decision, the Commission stated that "if [Petitioner] was not selected due to her lack of Central Office experience, that may be a violation of Rule 97.16, 4 Pa. Code § 97.16, and Management Directive 580.19; the job posting did not indicate that Central Office experience was part of the selection criteria for the EAM position."[8] (Certified Record (C.R.) at 857a.) The Commission then reasoned that,

_____

[8] Civil Service Rule 97.16 provides: "Appointing authorities may conduct interviews or otherwise assess relative suitability for appointment of certified eligibles, but the assessments **(Footnote continued on next page…)**

because Davy's statement supported the possibility that the Department violated Rule 97.16 and Management Directive 580.19, Petitioner had established a *prima facie* case for technical discrimination. The Commission proceeded to apply a burden shifting analysis pursuant to *Department of Health v. Nwogwugwu*, 594 A.2d 847 (Pa. Cmwlth. 1991). In *Nwogwugwu*, we explained that, after a complainant has established a *prima facie* case of discrimination, the burden shifts to the employer to show non-discriminatory reasons for its action. If the employer meets this burden, the complainant must then establish by a preponderance of the evidence that the employer's non-discriminatory reasons are mere pretext.

The Commission concluded that the Department met its burden by demonstrating that the panel did not improperly rely on factors not listed in the job posting's selection criteria. In support of this conclusion, the Commission pointed

---

**(continued…)**

must be based on job-related criteria and be conducted in accordance with standards established by the Director."

Regarding Management Directive 580.19, we have previously explained:

According to Management Directive 580.19, when the 'promotion without examinations [PWOE]' process is used, the appointing authority . . . *must* 'interview all employees' who meet the minimum experience and training requirements and established criteria for meritorious service and seniority and 'make a selection using merit related criteria as established by the appointing authority.' Management Directive 580.19(7)(a)(3) and (4).

*Gordy v. State Civil Serv. Comm'n (Dep't of Pub. Welfare)*, (Pa. Cmwlth., No. 1488 C.D. 2014, filed June 11, 2015), slip op. at 2. We recognize that pursuant to Commonwealth Court Internal Operating Procedures § 414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

10

to Davy's testimony, which it found to be credible, explaining his reference to Petitioner's lack of knowledge of Central Office operations. Davy explained that the Department was seeking a "candidate that had familiarity and a general knowledge of how the Bureau of Corrections Education worked and what [an EAM's] responsibilities were." (C.R. at 293-94.) The Commission also noted the first two items in the job posting's description of duties: "'the position is responsible for assisting the Bureau Director in the administrative work in the area of establishing overall program objectives' and for assisting 'the Bureau Director in the development of administrative, management, and programmatic procedures for programs under the auspices of . . . [the Bureau of Corrections Education].'" (C.R. 860a; *see also*, C.R. 363a.)

We hold that the Commission did not err in concluding that the Department had met its burden of demonstrating that it had non-discriminatory reasons for its action. Pursuant to Management Directive 580.19, a vacancy posting must include a "brief job description." It need not, however, include a detailed and exhaustive list of every discrete task that may be performed by the employee. The Commission concluded that knowledge of Central Office operations was pertinent to the job duties described in the posting. The first duty listed in the posting provides that "the position is responsible for assisting the Bureau Director in the administrative work in the area of establishing the overall program objectives . . . in the twenty-six state owned adult prisons operated by the [Department]." Knowledge of Central Office operations is beneficial to coordinating program objectives on a state-wide basis, and Davy's testimony further supports such a conclusion. (C.R. at 294.) Thus, the Commission did not

11

err in concluding that the factors considered by the panel were "based on job-related criteria" within the meaning of Rule 97.16.

Petitioner next argues that the panel asked Fazio a GED testing question allegedly not asked to all of the candidates. Petitioner points to the panel's interview notes for Fazio, which reference GED testing. The Commission determined that, if the panel had asked Fazio a question related to GED testing that it did not ask Petitioner, it would be "evidence of discriminatory treatment." (C.R. 855a.) The Commission, however, went on to note that Davy testified that there was not a question related to GED testing, but, rather, both Petitioner and Fazio brought up GED testing as an answer to the question "[w]hat would you undertake as your first mission, if hired . . .?" (C.R. at 575a.) Davy went on to testify that Fazio gave a more detailed answer to the question than Petitioner. The Commission found Davy's testimony credible, and, thus, we discern no error in its determination that the panel did not ask Fazio a question that it did not ask other candidates.

Petitioner also argues that the panel improperly considered her union affiliation in violation of Section 905.1 of the Act, 71 P.S. § 741.905(a).[9] Petitioner points to Davy's testimony that he viewed Fazio favorably as a candidate because she "understood the management perspective in handling

---

[9] Section 905.1 of the Act provides:

No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

grievances." The Commission was not persuaded by this argument, and it concluded that the panel viewed Fazio's experience with the grievance procedure from both a management and union perspective as beneficial, while it determined that Petitioner had less experience with the grievance procedure from the management perspective. Davy testified that Fazio had experience with the grievance process from the management side while Petitioner only had experience from the labor side. Petitioner introduced no evidence demonstrating that the Department viewed her union affiliation in a negative light. Thus, the Commission did not err in determining that the panel did not improperly consider Petitioner's union affiliation.

Finally, Petitioner alleges that Fazio's time working as a Staff Assistant constitutes working out of class[10] and that the panel improperly considered Fazio's experience out of class when making its selection. The Commission noted that Management Directive 525.4, Section 5a(6) provides, in pertinent part, that "an out-of-classification assignment will not entitle an incumbent to preference in the merit selection process." (C.R. at 862a.) The Commission concluded that Petitioner had submitted no evidence that the Staff Assistant position was "out of class" and further concluded that Fazio's

_____

[10] Section 97.63 of the Rules, 4 Pa. Code § 97.63, provides:

An appointing authority may temporarily assign an employee to perform duties and responsibilities of another class. Except in the case of emergency, which shall be limited to 30 work days, the employee so assigned shall meet all of the established requirements for the class to which assigned. Employees assigned to work out-of-class shall either have probationary or regular status in their current class. An out-of-class assignment does not entitle the incumbent to preferences for the position on a permanent basis.

13

appointment to the Staff Assistant position "was not a determinative factor in her selection." (*Id.*) We agree with the Commission that Petitioner introduced no evidence to demonstrate that the Staff Assistant was out of class. In her Brief, Petitioner points to the Commission's third finding of fact: "Fazio was employed as a Staff Assistant in the Central Region. [The Department] kept Fazio's position as Corrections School Principal at SCI-Waymart vacant while she was employed as a Staff Assistant." (C.R. at 819a.) The mere fact that Fazio's former position was vacant during her time as a Staff Assistant, however, is not dispositive evidence that she was working out of class. Section 97.63 of the Rules, 4 Pa. Code § 97.63, provides that the Department may "temporarily assign an employee to perform duties and responsibilities of another class." Thus, Petitioner must introduce evidence demonstrating that Fazio was performing duties and responsibilities of another class, rather than simply that she was temporarily reassigned. Petitioner has introduced no such evidence and has not argued that the duties and responsibilities of a Staff Assistant are out-of-class within the meaning of Section 97.63. Thus, the Commission did not err in determining that the panel did not improperly consider Fazio's experience as a Staff Assistant.[11]

---

[11] Additionally, Petitioner argues that the panel failed to consider her teaching certifications in violation of Management Directives and Rules. As discussed above, the panel was not required to make its decision solely based on the candidates' education and certifications. The panel weighed several factors, including education, and determined that Fazio was the most suitable candidate for the position. Thus, the panelists' alleged failure to consider Petitioner's teaching certifications does not constitute a technical violation of the Rules or any Management Directive.

For the reasons set forth above, we discern no error in the Commission's conclusion that Petitioner failed to put forth sufficient evidence to demonstrate technical discrimination.

Petitioner also argues that the Commission erred in concluding that the Department did not engage in traditional discrimination based on race. A person alleging that a personnel action was undertaken for traditional discriminatory reasons has the sole burden of proof. *Keim v. Dep't of Health*, 543 A.2d 1261, 1264 (Pa. Cmwlth. 1988). Traditional discrimination may not be inferred; instead, the petitioner must demonstrate affirmative, factual support for the alleged discrimination. *Price*, 672 A.2d at 412. Here, Petitioner alleges that she was not selected for the position because she is African-American. In support of this argument, Petitioner cites *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). In *Griggs*, the United States Supreme Court held that a job requirement that applicants must have earned a high school diploma was specifically targeted to exclude African-American job applicants.

Before the Commission, Petitioner pointed to several statistical studies indicating that African-Americans and other minority groups were underutilized within the Department, without reference to the Bureau of Education or the EAM position. The Department itself acknowledges in its Equal Employment Opportunity Plan that minorities are underutilized and has stated that it has altered its hiring procedures to rectify the disparity. As previously stated, however, race-based discrimination cannot be inferred based only on general statistics. *Price*, 672 A.2d at 412. In contrast to Petitioner's interpretation of *Griggs*, the United States Supreme Court has recently opined that a "disparate-impact claim relying on a statistical disparity must fail if the plaintiff

15

cannot point to a defendant's policy or policies causing that disparity." *Texas Dep't of Housing and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, ___ U.S. ___, ___, 135 S. Ct. 2507, 2512 (2015). Petitioner has put forth no evidence demonstrating a policy or procedure that negatively impacts African-American applicants or any other affirmative evidence of discrimination by the Department. Thus, the Commission properly concluded that Petitioner failed to present evidence of traditional, race-based discrimination.

Petitioner also alleges that that the Commission failed to address her "pre-textual argument raised under *Henderson v. Commonwealth of Pennsylvania*, 560 A.2d 859 (Pa. Cmwlth. 1989)," *appeal denied*, 574 A.2d 73 (Pa. 1990). (Pet'r's Br. at 29.) In Petitioner's brief to the Commission, however, she merely cites *Henderson* as setting forth the standard for demonstrating a *prima facie* case for racial discrimination.[12] (C.R. 798-99.) Although Petitioner asserted that the

---

[12] In *Henderson*, we explained:

> If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's *prima facie* case stands determinative of the factual issue of the case. In other words, if the employer rests without producing evidence, the plaintiff must prevail if he or she has produced sufficient evidence to make out a *prima facie* case. If, however, the defendant offers a non-discriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: Has the plaintiff proven discrimination by a preponderance of the evidence? Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.' The plaintiff is, of course, free to present evidence and argument that the explanation offered by the

**(Footnote continued on next page…)**

16

Department "used pretext" to promote Fazio, she offered no evidence that the interview process was pretextual and developed no legal argument before the Commission as to why it should conclude that the process was pretextual. Thus, to the extent the Commission did not address Petitioner's "pre-textual argument raised under *Henderson*," it was under no obligation to do so, as the argument was not properly developed. *See* Pa. R.A.P. 302(a); *Fatzinger v. City of Allentown*, 591 A.2d 369, 371 (Pa. Cmwlth. 1991), *appeal denied*, 602 A.2d 862 (Pa. 1992).[13]

Accordingly, we affirm the Commission's order.

_____
P. KEVIN BROBSON, Judge

_____
**(continued…)**

> employer is not worthy of belief or is otherwise inadequate in order to persuade the tribunal that her evidence does preponderate to prove discrimination. She is not, however, entitled to be aided by a presumption of discrimination against which the employer's proof must 'measure up'.

*Henderson*, 560 A.2d at 863 (quoting *Allegheny Hous. Rehab. Corp. v. Pa. Human Relations Comm'n*, 532 A.2d 315 (Pa. 1987)).

[13] Petitioner also briefly mentions retaliation in her brief, quoting testimony indicating that Davy was aware of a grievance she had filed against the Department for a separate matter. To the extent that Petitioner now raises an argument that the Department retaliated against her for filing a grievance, that argument was not raised before the Commission and, thus, is waived on appeal. *Fatzinger*, 591 A2d. at 371.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G. Marisa Kelly-Pimentel, Ph.D., : 
                    Petitioner : 
                        : 
          v. :   No. 72 C.D. 2016
                        : 
State Civil Service Commission : 
(Department of Corrections), : 
                  Respondent : 

# **O R D E R**

AND NOW, this 1st day of February, 2017, the order of the State Civil Service Commission is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge